In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00210-CR


______________________________




KEVEN MCENTIRE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


 Bowie County, Texas


Trial Court No. 07F0287-102




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Keven McEntire accumulated quite a list of charges for various forms of sexual conduct with
children during the summer of 2006. In this case, (1) he stands convicted, in a Bowie County jury trial,
of nine counts, seven of which were for aggravated sexual assault of a child, one for indecency by
sexual contact, and one for indecency by exposure. (2) In three of the counts for aggravated sexual
assault of a child, we reverse and render McEntire's convictions for legally insufficient evidence;
otherwise, we affirm the judgment of the trial court.

 McEntire contends that the trial court violated his right to a public trial, as guaranteed by the
United States and Texas Constitutions, by closing portions of the trial to the public. He also argues
that there is factually and legally insufficient evidence to support some of the convictions.

 We hold that (1) no error was preserved on the public-trial issue and that (2) evidence is
legally insufficient to support three of the aggravated sexual assault charges.

(1) No Error Was Preserved on the Public-Trial Issue

 Closing a trial to the public is an act with constitutional repercussions. The right to a public
trial is one of the few structural (fundamental constitutional systemic) requirements identified by the
United States Supreme Court, and if the right is improperly denied, the error is categorically exempt
from harm analysis. Arizona v. Fulminante, 499 U.S. 279, 309 (1991); Salinas v. State, 980 S.W.2d
219, 219 (Tex. Crim. App. 1998).

 However, even in the case of errors of constitutional dimension, the claim may be waived
or forfeited in some situations. See Saldano v. State, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002).

 [O]ur system may be thought to contain rules of three distinct kinds: (1) absolute
requirements and prohibitions; (2) rights of litigants which must be implemented by
the system unless expressly waived; and (3) rights of litigants which are to be
implemented upon request.


Marin v. State, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), overruled on other grounds, Cain v.
State, 947 S.W.2d 262 (Tex. Crim. App. 1997). As the courts have noted, most rights are of the last
type, and are the basis for Rule 33.1 of the Texas Rules of Appellate Procedure and its requirement
that a party object or otherwise complain in order to preserve a claim of error for review. Ieppert
v. State, 908 S.W.2d 217, 219 (Tex. Crim. App. 1995); see Tex. R. App. P. 33.1.

 In this case, the matter was raised before trial, based on the State's motion to exclude the
public while the child victims were testifying, and while photographs were being shown. Defense
counsel stated that he had no objection, except that they had discussed perhaps allowing a member
of McEntire's family to be excepted from that "so that they can see and know the evidence that is
presented against their son if they want to."

 The United States Supreme Court held some years ago that the failure to object to closing
the courtroom served to waive the right to a public trial. Levine v. United States, 362 U.S. 610, 619
(1960). In an unpublished opinion, the San Antonio Court of Appeals found that this right fell into
the third category and was forfeited by a failure to complain of exclusion of the public. (3) 

 We need not decide at this time whether we agree with that determination, as the express
waiver made by counsel was sufficient to pass muster even under the second level of analysis. Thus,
even if this removal of the public for certain, limited portions of the trial was equivalent to the
closing of the courtroom to the public, the issue has not been preserved for our review.

 We overrule the contention of error.

(2) Evidence Is Legally Insufficient to Support Three of the Aggravated Sexual Assault Charges

 McEntire next contends that the evidence is insufficient to sustain some of the multitude of
convictions returned by the jury. He specifically contends that the evidence is inadequate to prove
all seven convictions for sexual assault of a child in this case.

 To establish the seven aggravated sexual assault charges, the State was required to prove
seven separate instances in which McEntire violated the statute in one of the following enumerated
ways:

 (i) caus[ing] the penetration of the anus or sexual organ of a child by any
means;


 (ii) caus[ing] the penetration of the mouth of a child by the sexual organ of
the actor;


 (iii) caus[ing] the sexual organ of a child to contact or penetrate the mouth,
anus, or sexual organ of another person, including the actor;


 (iv) caus[ing] the anus of a child to contact the mouth, anus, or sexual organ
of another person, including the actor; or


 (v) caus[ing] the mouth of a child to contact the anus or sexual organ of
another person, including the actor . . . .


See Tex. Penal Code Ann. § 22.021(a)(1)(B) (Vernon Supp. 2008).

 The question becomes whether there is evidence of seven separate occurrences that would
support these seven separate convictions for aggravated sexual assault of a child.

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral
light and determine whether the evidence supporting the verdict is so weak or is so outweighed by
the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or
manifestly unjust. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

 The jury was asked, on these seven charges, whether it found, beyond a reasonable doubt,
that:


 On or about June 1, 2006, McEntire caused the sexual organ of L.R. to contact McEntire's
mouth;

 On or about June 20, 2006, McEntire caused the sexual organ of L.R. to contact McEntire's
mouth;
 On or about July 15, 2006, McEntire caused the sexual organ of L.R. to contact McEntire's
mouth;

 On or about August 1, 2006, McEntire caused the sexual organ of L.R. to contact his mouth;

 On or about June 15, 2006, McEntire caused penetration of the anus of L.R. by inserting his
finger;

 On or about July 20, 2006, McEntire caused the anus of L.R. to contact his mouth;

 On or about August 5, 2006, McEntire caused the mouth of L.R. to contact the sexual organ
of G.S.



 We first look at the last count, the one involving G.S. There is evidence that, at McEntire's
request, L.R. touched G.S.'s penis with her mouth.

 We now look at the remaining six counts. L.R. testified that McEntire licked her at least four
times with his tongue. Neither the questions nor the answers, however, indicated where on her body
he licked her, and it is not apparent from the context. The State continued its examination, and L.R.
testified that McEntire put his finger in her "front bottom," and then that he licked her "back bottom." 
She also testified that he had touched her breasts at least once.

 Another child, C.K., testified that he had seen McEntire lick L.R. on the "front of her bottom"
and that McEntire had asked him to lick L.R. in her private and that he had done so. 

 We find evidence to support each of these allegations, with the exception of the four
identical, though time differentiated, contentions that McEntire caused L.R.'s sexual organ to contact
his mouth. As set out above, there is clear and uncontroverted evidence, in the form of testimony
from C.K., that McEntire licked L.R.'s sex organ once. Although the State does not clearly say so,
it appears that the State is relying on testimony by L.R. that McEntire had licked her with his tongue
four times that summer. 

 But, after careful review of the testimony, we must agree with McEntire's counsel that L.R.'s
testimony does not show where McEntire licked her. We have also reviewed the entire context of
her testimony and the rest of the record and find nothing that would lead to such a conclusion. The
State was required to prove that McEntire's mouth made contact with L.R.'s sexual organ on four
different occasions that summer, but evidence to accomplish that task does not appear in the record. 
As support, the State has pointed us to the testimony of the outcry witness that, "She told me that
Keven had been licking her private and sticking his finger in her butt." That does not provide any
evidence that McEntire did so on four separate occasions.

 The testimony of C.K. that supports one of the mouth/sexual organ contentions is time
descriptive only to the extent that it happened during the summer. The State alleged four different
dates on which the same type of act occurred, and C.K.'s testimony is so general it can be attached
to one of them, but only one of them under the leniency allowed under the "on or about"
terminology. In this particular case, however, that failure of specificity as to date makes no
difference. McEntire was sentenced identically in each instance, to a life sentence on each count,
to run concurrently. Accordingly, we will reverse his conviction on three of the four counts.

 The evidence is legally and factually insufficient to support the conviction on count number
one, count number two, and count number three of the conviction. We reverse the conviction on
each of those counts, and render a judgment of acquittal thereon. In all other respects, the judgment,
as so modified, is affirmed.





 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 12, 2008

Date Decided: August 13, 2008


Publish

1. A companion case, also before this Court on appeal, was tried together with the charges in
this case. The companion case--bearing our case number 06-07-00211-CR and numbered
07F0288-102 in the trial court--yielded convictions on one count of indecency by exposure and one
count of aggravated assault on a child, for which McEntire was sentenced to one life sentence and
one ten-year sentence. In a separate opinion issued this day, we affirm the judgment in that
companion case.
2. The jury assessed punishment separately on each count, and the trial court sentenced
McEntire accordingly, resulting in seven life sentences, one twenty-year sentence, and one ten-year
sentence.
3. Rodriguez v. State, No. 04-04-00230-CR, 2005 Tex. App. LEXIS 2959 (Tex.
App.--San Antonio Apr. 20, 2005, pet. ref'd).


3" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Shading 1 Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00125-CV

                                                ______________________________

 

 

                                     LACKS STORES,
INC., Appellant

 

                                                                V.

 

                        GREGG COUNTY APPRAISAL DISTRICT AND

GREGG COUNTY APPRAISAL
REVIEW BOARD, Appellees

 

 

                                                                                                  


 

 

                                       On Appeal from the 124th
Judicial District Court

                                                             Gregg County, Texas

                                                       Trial Court
No. 2007-1969-B

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            Lacks
Stores, Inc., a furniture retailer, brought suit in an effort to appeal a
determination of the value of its inventory for the years 2003 through 2008 by
the Gregg County Appraisal District and the affirmation of that evaluation by
the Gregg County Appraisal Review Board.[1]  The amount of ad valorem tax due to be paid
by Lacks Stores is based upon the valuation of its inventory.  The trial court granted a partial summary
judgment in favor of Gregg CAD and dismissing Lacks Stores claims as they
pertained to the tax years 2003 through 2006, and then held a bench trial on
the claims involving the 2007 and 2008 tax years.  Broadly, Lacks Stores claims that the
appraisers for Gregg CAD failed to apply adequate depreciation reductions to
the value of the inventory (which was calculated by Gregg CAD as the cost of
its acquisition by Lacks Stores).  Lacks
Stores tracked its administrative remedies in the tax review process, thence to
the district court, and now to this Court on appeal.

            Lacks
Stores sets out seven issues.  The first
three complain of matters involved in the granting of the partial summary
judgment, while the fourth complains of the failure to award Lacks Stores
attorneys fees for responding to the motion for summary judgment.  The fifth issue argues that the court erred
(presumably in its judgment at the trial) by ruling that Gregg CAD had complied
with Tex. Tax Code Ann. § 23.12 (West
2008), in its assessment of value, although it had admitted its failure to
adhere to what Lacks Stores maintained was required appraisal methodology and
supposedly admitted having no underlying facts to support its appraisals.  The sixth issue complains that [t]he Court
erred by denying that Appellants expert, Robert Johnson was not a certified
appraiser.  The seventh issue is a
complaint that the court erred by condoning, and thereby encouraging,
bureaucratic failures and omissions. 

The Partial Summary Judgment

            The
partial summary judgment in this case arose from a mixed traditional and a
no-evidence motion.  The proponent of a
traditional summary judgment has the burden of showing that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of
law.  Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 54849 (Tex. 1985).  In such a motion, the question on appeal is
not whether the summary judgment proof raises a fact issue with reference to
the essential elements of the plaintiffs cause of action, but whether the
summary judgment proof establishes that the movant is
entitled to summary judgment as a matter of law.  French
v. Gill, 252 S.W.3d 748 (Tex. App.Texarkana 2008, pet. denied).  Similarly, in a no-evidence summary judgment,
the question is whether the nonmovant produced any
evidence of probative force to raise a fact issue on the material questions
presented.  Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 50607 (Tex.
2002).

            In
this appeal, the question to be addressed concerning the grant of the partial
summary judgment begins with an examination of the meaning of certain terms
used in a statute and then applying that meaning to a particular type of
allegation.  In this partial summary
judgment, with no specificity as to reasons or the type of judgment being
granted, the trial court stated that the motion should be granted and entered a
take-nothing judgment in favor of Gregg CAD and against Lacks Stores for
appraisals of Lacks Stores inventory for the tax years 2003 through
2006.  Underlying that judgment is a
single (and quite brief) motion for summary judgment.[2]  The underlying motion requested judgment,
alleging that Lacks Stores complaints do not allege a clerical mistake as
required by the statute to which Lacks Stores makes reference, but, rather,
alleges a mistake in appraisal methodology.

            Lacks
Stores position for relief for tax years 2003 through 2006 is based upon its
interpretation of the language contained in Section 25.25 of the Texas Tax
Code.  Tex.
Tax Code Ann. § 25.25 (West
2008).  That statute provides that an
appraisal roll for previous years may only be changed if one of several
enumerated circumstances is shown to exist. 
The relevant part of the statute is found in Section 25.25(c)(1) of the
Texas Tax Code, which provides that an appraisal review board may change an
appraisal roll for any of the five preceding years to correct (1) clerical
errors that affect a property owners liability for a tax imposed in that tax
year.  Tex.
Tax Code Ann. § 25.25(c)(1).

            Lacks
Stores relies on the definition of clerical error employed in the Texas Tax
Code:

(18)      Clerical error means an error:

            (A)       that is or results from a mistake or failure in writing, copying,
transcribing, entering or retrieving computer data, computing, or calculating; or

            (B)       that
prevents an appraisal roll or a tax roll from accurately reflecting a finding
or determination made by the chief appraiser, the appraisal review board, or
the assessor; however, clerical error does not include an error that is or
results from a mistake in judgment or reasoning in the making of the finding or
determination.  

 

Tex. Tax
Code Ann. § 1.04(18) (West 2008) (emphasis added).

            Lacks
Stores train of thought appears to be that Gregg CAD failed to use the correct
appraisal method because the use of a method of appraisal that does not comport
with that employed by Lacks Stores, constituting a mistake; taking this line
of reasoning further, Lacks Stores maintains that the supposedly erroneous
appraisal method resulted in clerical errors for the preceding five years
appraisal.  Traveling further along that
skein, it concludes that Gregg CADs appraisal method constituted a clerical
error and, thus, one which is permitted by statute to be corrected.

            Lacks
Stores argument rests largely upon an opinion issued by the Fort Worth Court
of Appeals.  See Comdisco v. Tarrant County Appraisal Dist. & Appraisal Review
Bd. of Tarrant County, 927 S.W.2d 325 (Tex. App.Fort Worth 1996, pet. refd).  The Comdisco case addressed the dichotomy
between parts (A) and (B) of the section of the Texas Tax Code quoted
above.  The focus of that opinion,
however, was the question of whether such a clerical error could be corrected
only if it was one made by the taxing entity or if correction was possible if
the clerical error had been made by the taxpayer.  The Fort Worth court found that (A) includes
such errors by both state and taxpayer, but (B) could not include these errors.  Although that ruling is entirely reasonable,
its rationale is neither important to, nor applicable to this analysis.

            In
analyzing a statute, we begin by presuming that lawmakers intended what they
enacted in the use of the statutes text, relying (whenever possible) on the
plain meaning of the words chosen.  Ojo v. Farmers Group, Inc., No. 10-0245, 2011
WL 2112778, at *12 (Tex. May 27, 2011) (Jefferson, C.J., concurring); Fresh Coat, Inc. v. K-2, Inc., 318
S.W.3d 893, 901 (Tex. 2010) (Our ultimate purpose when construing statutes
is to discover the Legislatures intent. Presuming that lawmakers intended
what they enacted, we begin with the statutes text, relying whenever possible
on the plain meaning of the words chosen.  (Footnotes omitted)).

            The
question here is whether the language in Section 1.04(18)(A) of the Texas Tax
Code can include an allegation of a failure by the taxing entity to use all of
the proper considerations in calculating a tax liability, or if it is limited
to the historic meaning of a clerical error. 
As pointed out by Gregg CAD, this precise issue has been addressed
recently by Texas Corpus Christi Court of Appeals in a case involving an
appellant apparently related to the appellant here in Lacks Stores Valley Stores, Ltd. v. Hidalgo County Appraisal Dist., No. 13-10-00500-CV, 2011 WL 2475843
(Tex. App.Corpus Christi June 23, 2011, no pet. h.) (mem.op.).


            In
that case, the Corpus Christi court reviewed the longstanding meaning of the
term and its use within the statute; it concluded that the refusal of the
appraisal district to employ the evaluation method urged by Lacks Stores
(which, as here, enhanced the depreciation of the inventory) could not meet the
definition of a clerical error.

HCADs
failure was not a simple, inadvertent omission made while reducing a judgment
into writing, but rather, the result of alleged reasoning and
determination.  . . . the judgment
actually entered was accurately reflected . . . thus HCADs failure to
appropriately depreciate is not properly defined as a clerical error.

 

Id. at *3. 
Instead, the court found this claim to be an attempt to obtain a
substantive reevaluation of the propertys value, something which must be
brought solely through the appeals process of Chapter 41 of the Texas Tax
Code.  Tex.
Tax Code Ann. §§ 41.01.71 (West 2008 & Supp. 2010).  Although the ruling is not controlling here,
the reasoning employed has merit and is directly applicable to this case.  A clerical error has always been defined as
one that does not result from reasoning or determination.  See
Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986).  A clerical error is [a] mistake of law or of fact
in a tribunals judgment, opinion, or order.  Blacks
Law Dictionary 621 (9th ed. 2009).  Although the statute uses some different terms
to describe the scenario, the language employed simply provides additional
synonyms without altering the underlying meaning of the term.

            Lacks
Stores allegations of error amount to a difference of opinion as to the proper
means to evaluate property, not of a clerical mistake.  Therefore, they cannot fall within the
parameters of the statute under which it sought relief.  The trial court did not err by granting the
partial summary judgment on this issue.

            Because
Lacks Stores cannot prevail on the first issue, its second, third, and fourth
issues also fail, each being predicated on the same premise.  The existence of fact issues about the effect
of depreciation on the value of the inventory, the failure to exclude an
affidavit filed by Gregg CAD, and the failure to award Lacks Stores its
attorneys fees for its efforts in response to the motion for partial summary
judgment are all matters that we need not reach because of our affirmance of the partial summary judgment.

            Lacks
Stores fifth issue reads as follows: 
The Court erred by ruling that Appellees
complied with § 23.12, Tex. Tax C. when Appellees had
admitted their failure to adhere to the required underlying methodology and had
admitted to having no underlying facts or data to support their appraisals.  

            This
issue attacks the final judgment after trial. 
It is not strictly a complaint about the sufficiency of the evidence;
rather, it is a complaint that the trial court improperly understood the
meaning of the statute and that the admissions of Gregg CAD were of such a
nature as to require a judgment in favor of the taxpayer.  Procedurally, Lacks Stores had followed its
administrative remedies by filing a protest with Gregg CAD over the last two
years taxes and participating in a hearing before the review board;
nevertheless, it lost.  Similarly to the
claim addressed previously (but which utilized a different statute), Lacks
Stores argued that the methods used to appraise the property were not valid.

            The
trial court conducted a bench trial and found that [b]ased
upon such evidence, the Court finds that the Gregg County Appraisal District
complied with Section 23.12 of the Texas Tax Code in appraising Plaintiffs
property for 2007 and 2008.  The court
concluded its judgment by adjudging the market property for the properties for
2007 and 2008 as the same appraised values as determined by Gregg CAD.  Lacks Stores argues that:  (1) Gregg CAD admitted that it had no study to
determine what a retail furniture stores Unit of Inventory would sell for to
a purchaser who would continue the business, (2) it admitted it had conducted
no study of cash, open market, with no duress, and knowledgeable buyer, and (3)
it had conducted no studies to determine the value of intangibles, individual
characteristics, or functional and economic obsolescence.  

            The
argument posited by Lacks Stores is that Gregg CAD should have used a
depreciated value of inventory for tax purposes, rather than the cost of the
inventory and complains that Gregg CAD failed in its duty to make an accurate
appraisal of value by not taking such factors into consideration during its
decision-making process.  It then goes
further, arguing that the use of such factors is mandatory to making an
accurate appraisal and that without the use of the appraisal techniques
employed by its expert, its appraisal value is invalid.  Lacks Stores concludes its briefing by
asking this Court to apply the factors and considerations set out by its expert
and render judgment for the proper amount under its experts theory, by
reference to a page attached as an appendix to its brief.[3]

            In
an excessive valuation case under Tex.
Tax Code Ann. § 42.25 (West 2008), the taxpayer must prove that the
valuation is grossly excessive.  See Sears Roebuck & Co. v. Dallas
Central Appraisal Dist., 53 S.W.3d 382 (Tex. App.Dallas 2000, no pet.).  Grossly excessive valuation exists when the
assessed value is proven to so far exceed the fair market value as to shock the
mind and raise the assumption that the value was either fraudulent or that it
does not represent a fair and conscientious effort by the board to arrive at
the cash market value.  Houston Lighting & Power Co. v. Dickenson
Indep. Sch. Dist., 794 S.W.2d 402, 40405 (Tex.
App.Texarkana 1990, writ denied). 
Determining whether a tax assessment is grossly excessive is a question
of law.  Polk Co. v. Tenneco, Inc., 554
S.W.2d 918, 920 (Tex. 1977); Houston
Lighting, 794 S.W.2d at 404.  In
addition to that determination, a harm analysis also applies:  on appeal from a trial courts decision after
its review of an appraisal review boards decision, an appealing taxpayer may
prevail only if the taxpayer can show monetary substantial injury because of
the alleged arbitrary taxation plan.  Rusk Indus., Inc. v. Hopkins County Tax
Appraisal Dist., 818 S.W.2d 111, 116 (Tex. App.Texarkana 1991, writ
denied).

            In
this case, Lacks Stores neither sought nor obtained findings of fact or
conclusions of law.  When a party does
not request findings of fact or conclusions of law, the judgment implies all
necessary findings of fact to support it are present, provided (1) that the
proposition is one raised by the pleadings and supported by the evidence and
(2) that the judges decision can be sustained on any reasonable theory that is
consistent with the evidence and the applicable law, considering only the
evidence favorable to the decision.  Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990);
Jones v. Smith, 157 S.W.3d 517 (Tex.
App.Texarkana 2005, pet. denied).

            In
a cross-point, Gregg CAD argues that the taxpayer has waived any complaint
about excessive valuation or substantial injury because it did not challenge
the determination of value made by the trial court.  Although we must agree that the way the issues
were briefed do not unequivocally make such an attack, we read the brief
liberally.  In giving latitude in a
liberal reading, we read Lacks Stores brief to argue that (due to a
misunderstanding of the law by the trial court), the valuation of the inventory
was incorrect and Lacks Stores requests this Court to render a judgment.[4] In
summary, the taxpayer wants to have a lesser evaluation, but only tells this Court
its belief as to the correct amount by reference to matters not clearly set out
in its brief.  Although Lacks Stores
brief is not a paragon of clarity in this regard, we believe the argument is
sufficiently before us that we can act upon it.

            With
effort, one might also extract from Lacks Stores brief that it intended to
include a complaint that the evidence at trial was insufficient to support the
judgment.  That potential argument,
however, is neither briefed by reference to applicable law governing such an
issue, nor does it contain any attempt to provide a reasoned analysis of such a
claim.  Because it would be torturous to
construe the brief to address this potential issue, we will not stretch our
liberality so far as to create arguments and issues that only exist as
phantoms.  By failing to present a point
or argument, an appellant waives his right to complain of the error.  The court of appeals errs if it reverses on
that ground in the absence of properly assigned error.  Pat Baker Co. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998); see Tex.
R. App. P. 38.1(h).

            The
question we will first address is whether the taxpayer has shown us that the
trial court misapplied the statute.  Lacks
Stores focuses its attention on Section 23.12(a) of the Texas Tax Code, which
states that the market value of an inventory is the price for which it would
sell as a unit to a purchaser who would continue the business.  Tex.
Tax Code Ann. § 23.12(a) (West 2002). 
The Code does not contain a specific type of analysis that must be
utilized in reaching that valuation. 
Thus, the taxpayer is in the position of complaining that the method
used by Gregg CAD is, as a matter of law, erroneous.

            However,
there was substantial evidence introduced in the form of testimony from several
district employees regarding the evaluation methods employed by Gregg CAD
relating to its choice of means to determine the value of the inventory,
pertaining to its determination that the cost of the inventory was equivalent
to its market value, and its determination that the values assessed for those
two years actually reflect the price for which the inventory would sell as a
unit to a purchaser who would continue the business.

            In
short, there is evidence that the evaluation was not arbitrary.  Gregg CAD explained the method it used, the
reasons for adoption of that method, and of the way that Gregg CAD applied its
methodology to the particular fact situation. 
There was also evidence provided to the appraisal district by the
taxpayer regarding the amount that the taxpayer had paid for the property being
evaluated.  Gregg CAD determined that
under its method of calculation of value, no allowance for depreciation was
warranted; from that, it determined its opinion of the fair market value of the
inventory for the two years at issue.

            In
a variation on its argument, Lacks Stores points out that Section 23.01(b) of
the Texas Tax Code requires Gregg CAD, in a mass appraisal of this nature, to
comply with the Uniform Standards of Professional Appraisal Practice
(USPAP).  It then avers that one of Gregg
CADs answers to requests for admissions proves that Gregg CAD failed in its
duties to follow USPAP guidelines.  In
the response cited by Lacks Stores, Gregg CAD admitted that it could not
certify compliance with USPAP during its appraisal of property owners
inventory during the tax year(s) in dispute. 
Lacks Stores discovery requests then go on to demand that if Gregg CAD
denied that it could not make such a certification, then Gregg CAD was to
produce with your response a copy of the Districts USPAP compliance
certification for its appraisal of property owners inventory for the tax
year(s) in dispute.

            Gregg
CAD also categorically stated, however, that it did comply with the USPAP
obligations necessary to accurately appraise the owners unit of inventory and
that it had a certified mass appraisal model specifically for retail furniture
inventories.  At most, there is a
question of fact as to whether the USPAP standards actually were used.  Further, contrary to Lacks Stores position,
Gregg CADs admissions that it had not prepared a study on various aspects of
the property evaluation is not conclusive proof that it had failed to utilize
appropriate considerations in its evaluation. 
Due to the fact that Lacks Stores makes no direct attack on appeal upon
either the factual or legal sufficiency of evidence to prove any particular
matter and provides no citation to authority related to evidentiary sufficiency
or attempt to apply evidentiary standards, the sufficiency of the evidence is
not at bar in this case.

            Lacks
Stores also generally attacks Gregg CADs Personal Property Manual which it
acknowledges that it uses, saying that the manual is unreliable, speculative
and conclusory.  Lacks Stores goes on to maintain that the
property cards used by it are conclusory and that its
field inspection notes are irrelevant to prove anything more than the fact that
the property exists, failing to analyze the individual characteristics of the
property.  That allegation is used to set
up an argument that Lacks Stores expert witness was necessarily the one who
was more credible and who should be believed. 
This position is taken even though the expert witness neither actually
saw nor inspected the inventory because his familiarity with Appellants
business practices and with Appellants inventory databases made an inspection
superfluous. 

            It
is not precisely clear what role those statements play in this analysis, but
they appear to be designed to provide support for Lacks Stores prior
suggestion that improper standards were used by Gregg CAD in making its
appraisal or evaluation.  However, in the
absence of an attack upon evidentiary sufficiency, fact-findings (implied or
otherwise) are not before us for review. 
As such, they do not provide a convincing explanation how this shows, as
a matter of law, that Gregg CAD entirely failed to use proper procedures or
methodology in its evaluations.

            Lacks
Stores also sets up an issue complaining that Gregg CAD had admitted matters in
discovery that required a different result from that which ultimately was
reflected in the appraisal of Lacks Stores inventory.  However, that argument seems predicated on
the ground that the sole defensible method for evaluation was that provided by Lacks
Stores expert witness and that Gregg CAD used a different method.  Since there is no statutory requirement that
the taxpayers preferred method must be applied to the exclusion of the one
selected by Gregg CAD, the admissions are of no consequence to the outcome of
this case.

            Lacks
Stores complains that [t]he Court erred by denying that Appellants expert,
Robert Johnson was not a certified appraiser. 
We read the argument as contending that the trial court erred by not
treating Johnson as a certified appraiser.  However, the fact that Johnson is not a
certified appraiser under Texas law is not in dispute.  Thus, the courts recognition of the name to
put to Jacksons credentials is not error.  In the face of this apparent side issue,
Johnson was allowed to testify without restrictions in the same mode as one who
qualifies as an expert. Presumably, the trial court took his testimony into
account in coming to its conclusion (irrespective of whether he was a certified
appraiser or whether he was not).  Thus,
even if some error existed in the trial courts refusal to recognize Johnson as
a certified appraiser, any harm resulting to Lacks Stores would not be
apparent.

            Lacks
Stores finally alleges that bureaucratic bungling by Gregg CAD is part of a
systemic failure to properly evaluate inventories and that it is generically
unfair as follows:  The court erred by
condoning, and thereby encouraging, bureaucratic failures and omissions.  This general statement is followed by a
recapitulation of all of the complaints that Lacks Stores has voiced about the
evaluation of its property (including the amount of the evaluation, the means
by which it was determined, and the way it was calculated), the amount of taxes
assessed against it, and the trial courts refusal to address what it believes
to be fundamental unfairness.  In this
point, there does not appear to be an issue or argument posed in such a fashion
that would make it amenable to appellate review.

            We
affirm the judgment.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          September 7, 2011

Date Decided:             September 9, 2011











[1]Although
suit was necessarily brought against both entities, reference to the defendants
and appellees will be made hereafter as the Gregg
CAD.





[2]Note:  throughout the motion, counsel cites to the
Texas Property Code.  Although the
cited sections are recited correctly, they should properly reference the Texas
Tax Code.  





[3]Counsel
did not provide this Court with any completed calculations, or argue a
particular requested result, but in his briefing merely directs us to a trial
exhibit showing the result reached by its expert.  Counsel similarly failed to fully brief his
third issue, merely citing rules and referring to pages of pleadings. 





[4]Appellant
asks only for reversal and rendition, not reversal and remand.