RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0398p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

WILLIAM JOHNSON,

      *Petitioner-Appellant,*

    *v.*

JERI ANN SHERRY, Warden,

      *Respondent-Appellee.*

No. 08-1322

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-11214—Bernard A. Friedman, District Judge.

Argued: August 7, 2009

Decided and Filed: November 13, 2009

Before: COLE, CLAY, and KETHLEDGE, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Elizabeth L. Jacobs, LAW OFFICE, Detroit, Michigan, for Appellant. Andrew L. Shirvell, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Elizabeth L. Jacobs, LAW OFFICE, Detroit, Michigan, for Appellant. Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

    CLAY, J., delivered the opinion of the court, in which COLE, J., joined. KETHLEDGE, J. (pp. 12–15), delivered a separate dissenting opinion.

─────────────────

**OPINION**

─────────────────

    CLAY, Circuit Judge. Petitioner William Johnson ("Johnson") appeals the district court's judgment denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On appeal, he argues that the state violated his Sixth Amendment right to a public trial when it excluded the public from the courtroom during portions of his jury trial and that

his Sixth Amendment right to effective assistance of counsel was violated when his trial attorney failed to object to the closure. For the reasons that follow, we **VACATE** the judgment of the district court and **REMAND** for an evidentiary hearing.

## I.    BACKGROUND

### A.    Procedural History

On January 10, 2003, a jury convicted Johnson of one count of second degree murder in violation of Michigan Compiled Laws ("MCL") § 750.317; three counts of assault with intent to commit murder in violation of MCL § 750.83; and possession of a firearm during the commission of a felony in violation of MCL § 750.227b. Johnson was sentenced to concurrent prison terms of thirty-five to sixty years for the murder conviction and twenty to forty years each for the assault convictions, to be served consecutive to a two-year term for the felony firearm conviction.

Johnson timely filed a motion for a new trial and requested an evidentiary hearing, but his motion was denied. His convictions were affirmed on direct appeal, and the Michigan Supreme Court denied his application for leave to appeal. Johnson timely filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan and his petition was denied on February 12, 2008. Johnson timely filed a notice of appeal, along with a request for a certificate of appealability ("COA") on numerous issues. The district court granted a partial COA, certifying Johnson's claims that he was denied his right to a public trial and that his attorney was ineffective in failing to object to the closure of the courtroom. This Court entered an order stating that only the claims certified by the district court would be heard.

### B.    Substantive Facts

The Michigan Court of Appeals outlined the facts underlying Johnson's convictions as follows:

> Defendant's convictions arise from the fatal shooting of Carlos Davis and non-fatal shooting assaults of James Mathis, Larry Lewis and Robert Richards outside a dance hall in Hamtramck on March 3, 2002. The shootings occurred after the victims and several other persons left the hall

after a large brawl broke out among partygoers.  Only two persons, Robert Richards and Damon Ramsuer, reported seeing the shooter.

Richards told the police that he saw the shooter, and he gave a detailed description of his clothing.  The police obtained photographs taken by a hired photographer before the fight broke out, and showed the photographs to Richards, who identified defendant as the shooter from one of these photographs.  Richards identified [Johnson] at the preliminary examination, but Richards was killed before defendant's trial.  His preliminary examination testimony was read [to the jury] at trial.

The police also interviewed Ramsuer, who signed a statement declaring that he saw the shooter.  Ramsuer also identified defendant from the party photographs.  Ramsuer failed to appear for the preliminary examination.  When he testified at trial, he denied seeing the shooter, denied telling the police that he saw the shooter, and denied making an identification.  The prosecutor impeached him with the signed statement, and with the testimony of the officer who took the statement. . . .

At the start of trial, the prosecutor moved to close the courtroom to spectators during the testimony of three prosecution witnesses, Mathis, Lewis, and Ramsuer, who were afraid to testify publicly.  The prosecutor explained that two other prosecution witnesses had been killed under suspicious circumstances: Richards was killed in his bed, and Elvin Robinson was killed before the preliminary examination.  Defense counsel agreed to exclude spectators for these witnesses, but asked the trial court not to do so in the jury's presence.  The trial court never removed anyone from the courtroom, but instead instructed defendant's relatives not to arrive before 11:00 a.m. on the day that Mathis, Lewis, and Ramsuer testified, and to remain outside the courtroom until permitted to enter.

(R. at 85-86.)

Following his conviction, Johnson filed a motion for a new trial claiming denial of the right to a public trial.  In denying the motion, the trial court noted that counsel agreed to the suggested closure and that counsel asked members of Johnson's family not to appear in the courtroom until after 11:00 a.m. the following day.  After exhausting this claim and an ineffective assistance of counsel claim in the state courts, Johnson filed a petition for habeas relief in federal district court pursuant to 28 U.S.C. § 2254.  Among other claims, Johnson claimed that his right to a public trial was violated and that counsel was ineffective for failing to assert that right.  In the district court's opinion denying habeas relief, the court held that Johnson's claim was procedurally defaulted, providing the following explanation:

> [I]n this case, Respondent's procedural default argument is not based upon defendant's failure to object, it is based upon his consent, through counsel, to the courtroom closure. Respondent argues that this acquiescence constituted a waiver of this claim. The Court finds that Petitioner waived his right to a public trial by his acquiescence, through his attorney, to the closure.

(R. at 1602.) The district court also explained, in the alternative, that the claim would fail on the merits:

> The Court finds that the state court's conclusion was a reasonable application of *Waller*. While the trial court's findings could have been more clearly articulated on the record, it was, as observed by the Michigan Court of Appeals, a reasonable conclusion that the suspicious deaths of two witnesses had, in the trial court's opinion, sparked enough fear in three witnesses and sufficiently placed their well-being at risk to override Petitioner's right to a public trial. The trial court limited the closure to just three witnesses and ensured that the closure would not be evident to the jury. Considering these circumstances, the Court finds that the state court's application of the *Waller* factors was not unreasonable.

(R. at 1603.)

With respect to Johnson's ineffective assistance of counsel claim, the Michigan Court of Appeals concluded that "trial counsel's acquiescence was neither objectively unreasonable, nor outcome-determinative." (R. at 1148.)[1] The district court agreed, holding that because "the decision to close the courtroom for a limited time was not an unreasonable application of *Waller* . . . Petitioner has failed to establish that the failure to object to the closure fell 'outside the wide range of professionally competent assistance'" as required by *Strickland v. Washington*, 466 U.S. 668, 689 (1984). (R. at 1611.)

---

[1] It is unclear what "outcome determinative" means, because, as discussed below, if the counsel's actions resulted in a closure that was unjustified or broader than necessary, prejudice would be presumed.

## II.    DISCUSSION

### A.    Standard of Review

Because Johnson filed his habeas petition in 2006, his petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007). Under the AEDPA, Johnson may obtain relief only if he can show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). In reviewing a district court's decision to grant or deny habeas relief, this Court reviews questions of fact under a "clearly erroneous" standard and questions of law *de novo*. *Carson v. Burke*, 178 F.3d 434, 436 (6th Cir. 1999).

### B.    Analysis

Johnson's appeal presents two interrelated issues: (1) whether his Sixth Amendment right to a public trial was violated when the court closed the courtroom during the testimony of three prosecution witnesses; and (2) whether trial counsel was constitutionally ineffective for failing to object to the closure.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI; *see also In re Oliver*, 333 U.S. 257, 278 (1948) (holding this right to be binding on the states through the due process clause of the Fourteenth Amendment). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (internal quotation marks and citations omitted). Because of the "'great, though intangible, societal loss that flows' from closing courthouse doors," the denial of a right to a public trial is considered a structural error for which prejudice is

presumed.  *Id.* at 50 n.9 (quoting *People v. Jones*, 47 N.E.2d 1335, 1340 (N.Y. 1979)).

In light of these concerns, to justify the closure of a courtroom over the objections of a

defendant, "the party seeking to close [a public] hearing must advance an overriding

interest that is likely to be prejudiced, the closure must be no broader than necessary to

protect that interest, the trial court must consider reasonable alternatives to closing the

proceeding, and it must make findings adequate to support the closure."  *Id.* at 48

(applying the test set forth in *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510

(1984), to a Sixth Amendment public trial claim).[2]

In the instant case, the prosecution moved to close the courtroom during the

testimony of three prosecution witnesses.  The prosecutor informed the court that two

witnesses had been killed "under very suspicious grounds" near the time of the

preliminary examination and that a number of the remaining witnesses were afraid to

testify at trial. (R. at 138-39.)  The trial court expressed concerns regarding the closure,

stating that the prosecutor was "treading on some very dangerous ground," and inquired

"[w]ell, if these persons are essentially being protected . . . what is their concern about?"

(R. at 138-40.)  Nonetheless, defense counsel acquiesced to the closure, stating:

> Judge, let me make this very simple.  Mr. Johnson and I have discussed
> this issue since [the prosecution] brought it to my attention.  If the Court
> wants to do that, [i.e., close the courtroom], we don't really have any
> objection to it for those certain witnesses.  The only thing I'm concerned
> about is that we do it well away from the jury; that either we excuse, you
> know, so it doesn't look like it's some weird circumstance.  I mean, I
> don't have any problem.

(R. at 387.)  The court accepted defense counsel's position without making further

inquiry or findings, and defense counsel instructed members of Johnson's family to

remain outside of the courtroom during the testimony at issue.

---

[2]The four-part test discussed above was first developed in *Press-Enterprise*, 464 U.S. at 510,
which addressed the First Amendment right to public jury selection.  The *Waller* Court adopted the test
in the context of the Sixth Amendment right to a public trial, explaining that "there can be little doubt that
the explicit *Sixth Amendment* right of the accused is no less protective of a public trial than the implicit
*First Amendment* right of the press and public."  467 U.S. at 46 (emphasis added).

Johnson concedes that his attorney acquiesced to the closure, but argues that because the right to a public trial is a fundamental constitutional right and a structural guarantee, his attorney's statements were insufficient to constitute waiver. While we agree that the right to a public trial is an important structural right, it is also one that can be waived when a defendant fails to object to the closure of the courtroom, assuming the justification for closure is sufficient to overcome the public and media's First Amendment right to an open and public trial proceeding. *See Freytag v. Commissioner*, 501 U.S. 868, 896 (1991) ("[T]he Sixth Amendment right to a trial that is 'public,' provide[s] benefits to the entire society more important than many structural guarantees; but if the litigant does not assert [it] in a timely fashion, he is foreclosed.") (collecting cases); *see also Peretz v. United States*, 501 U.S. 923, 936-37 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619 (1960)). Because Johnson failed to object to the closure, his claim is procedurally defaulted unless he can show cause and prejudice for the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

> The doctrine of procedural default provides:
>
> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* Here, it is undisputed that Johnson failed to make a contemporaneous objection to the closure, which is required by an "independent and adequate state procedural rule." *United States v. Frady*, 456 U.S. 152, 168 (1982). It is also evident that the last state court from which Johnson sought review invoked the state procedural rule as a basis for its decision to reject review of the claim. (*See* R. at 86 (state court of appeals stated that Johnson "expressly waived his right by assenting to the trial court's decision to close the courtroom during the three witnesses' testimony." (citations omitted).) Thus, the district

court found that Johnson's claim was denied based on an independent and adequate state procedural rule.**3**

Under these circumstances, federal habeas review of Johnson's public trial claim is barred unless Johnson can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Johnson argues that he has demonstrated cause for the default because his counsel was ineffective in failing to object to the closure of the trial. Consequently, both of Johnson's claims on appeal turn on whether his counsel was constitutionally ineffective.**4**

In order to establish ineffective assistance of counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687-88. In the instant case, we agree that defense counsel's failure to object to the closure of Johnson's trial may have fallen below an "objective standard of reasonableness" as required in *Strickland*. Courts have been clear that while the closure of a trial may be justified in certain cases, "[s]uch circumstances will be rare . . . and the balance of interests must be struck with special care." *Waller*, 467 U.S. at 45; *see also Press-Enterprise*, 464 U.S. at 510 (holding that a closure may be justified only by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest"); *Owens v. United States*, 483 F.3d 48, 64 (1st Cir. 2007) (holding that the failure to object to the courtroom

---

**3**Johnson argues that the state procedural default was not an independent and adequate state ground barring subsequent federal review because Michigan courts "regularly waive contemporaneous objection defaults where the issue is perceived to concern constitutional due process rights" and that, here, the state court did so when it reached the merits of his public trial claim. (Johnson's Reply Br. 4.) However, while the state court did discuss the merits of Johnson's public trial claim, it clearly did so as an *alternative* basis for denying the claim, and the procedural default rule applies. (*See* R. at 86 ("[D]efendant expressly waived his right by assenting to the trial court's decision. . . . Moreover, the right to a public trial is not absolute . . . .")); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. . . . [R]econsideration of the federal issue on federal habeas [is curtailed] as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.") (emphasis in original).

**4**Attorney error can only constitute cause if it constitutes ineffective assistance of counsel under the test enunciated in *Strickland*, 466 U.S. 668. *See Coleman*, 501 U.S. at 752; s*ee also Murray v. Carrier*, 477 U.S. 478, 488 (1986).

closure for a day of jury selection deprived defendant of a substantial fair trial right). Counsel's failure to object to the closure of the courtroom during the testimony of three key prosecution witnesses, arguably the most important phase of Johnson's trial, denied Johnson a substantial fair trial right and counsel should have approached the issue with caution.

Given the absence of on-the-record findings by the trial court, it is difficult for us to discern whether it was necessary for the courtroom to be closed to all spectators for the testimony at issue. However, on the record before us, we are far from convinced that this was the "rare" circumstance where closure was justified, or that the closure was "no broader than necessary" to protect the interest advanced by the state under *Waller*, 467 U.S. at 48. While the prosecution made general allegations that two prosecution witnesses—Elvin Robinson and Robert Richards—had been murdered, Johnson stresses that another individual was charged with the stabbing of Elvin Robinson, and the prosecution offered no proof that Johnson or any member of Johnson's family was involved in the death of those individuals. *See Waller,* 467 U.S. at 48 (requiring the party seeking the closure to provide specific evidence of an overriding interest that was likely to be prejudiced). The prosecution presented no witnesses or evidence in support of the closure, and did not point to any incidents in which the witnesses at issue had been threatened or otherwise contacted by any member of Johnson's family. In fact, both the court and the prosecution acknowledged that the request was on thin or dangerous ground.[5] Notwithstanding these circumstances, defense counsel made no effort to limit the closure to less than three witnesses, or to ensure that the excluded individuals be limited to those individuals who might be perceived as a threat to the witnesses. Under these circumstances, defense counsel's acquiescence to the closure appears unjustified.[6]

---

[5]The prosecutor stated that "[t]he only case law I really found deals with small children [who we]re intimidated by someone present in those cases," acknowledged that his motion was on "very thin ground," and noted that he was sure that defense counsel would have an objection to the closure. (R at 138-39.) When the prosecution requested closure, the trial court stated that the prosecutor was "treading on some very dangerous ground." (*Id.* at 138.)

[6]Johnson alleges that the family members who were excluded included four aunts, ranging from 38 to 50 years in age, and a female first cousin who was 38 years old. Johnson's Br. 7. In *In re Oliver*, 333 U.S. 257, 272 (1948), the Supreme Court explained that a defendant has a particularly compelling interest in having his family present at his trial.

To be sure, counsel's decision would be owed deference if it could be viewed as strategic, and counsel may have been privy to information of which we are unaware. *See Strickland*, 466 U.S. at 689 (explaining that a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy). For example, defense counsel may have known that Johnson's family members had a history of contact with the relevant witnesses or he may have known more about the nature of the alleged witness killings than the record revealed. However, if counsel had additional relevant information, it is not evident from the record. No court below conducted an evidentiary hearing to explore these matters, and, on the record before us, it is difficult to see how the failure to object to the closure could have been strategic. *See id; see also Owens*, 483 F.3d at 66 (remanding for an evidentiary hearing when there was no indication that counsel's failure to object to a closure was strategic). Consequently, an evidentiary hearing is warranted to determine if trial counsel's failure to object to the closure constitutes deficient performance.

If Johnson can establish that counsel's performance was deficient, he will also be required to demonstrate that he was prejudiced by the error. *See Coleman*, 501 U.S. at 750 (requiring a showing of prejudice to excuse procedural default of a claim); *Strickland*, 466 U.S. at 687 (requiring a showing of prejudice to establish ineffective assistance of counsel). There would be no prejudice—either with respect to Johnson's ineffective assistance of counsel claim or with respect to the showing of prejudice necessary to excuse procedural default—if the government's interest in closure was so compelling that the closure at issue would have been ordered notwithstanding counsel's objection. However, in light of the compelling interest in a public trial and the rigorous test set forth in *Waller*, we are far from confident that the closure would have been implemented as suggested by the prosecution over Johnson's objections. Because the right to a public trial is a structural guarantee, if the closure were unjustified or broader than necessary, prejudice would be presumed. *See Waller*, 467 U.S. at 50 n.9; *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006) (citing *Waller* for the proposition that "violation of the public-trial guarantee is not subject to harmlessness review because 'the benefits of a public trial are frequently intangible, difficult to prove,

or a matter of chance'"). Consequently, if evidence reveals that counsel's failure to object fell below an objective standard of reasonableness, there is a strong likelihood that counsel's deficient performance would be deemed prejudicial.[7]

In sum, we are deeply concerned by the lack of attention afforded to Johnson's fundamental right to a public trial and conclude that further exploration of this issue is warranted.[8] On this record, it is virtually impossible to determine whether the closure of the trial was justifiable. Once further facts are available, the district court will be better equipped to determine whether closure of the trial was justified, whether trial counsel was constitutionally ineffective for failing to object, and whether the cause and prejudice components of Johnson's public trial claim can be satisfied.

## CONCLUSION

For the reasons stated above, we **VACATE** the district court's judgment denying habeas relief and **REMAND** for an evidentiary proceeding to determine whether the trial closure was justifiable, whether trial counsel was constitutionally ineffective for failing to object, and whether the cause and prejudice components of Johnson's public trial claim can be satisfied.

---

[7] As discussed in *Owens*, 483 F.3d at 64 n.13, Johnson must make two showings of prejudice. First, he must show that counsel's failure to object to the trial closure prejudiced him for purposes of determining whether there was ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. Second, he must show prejudice to excuse his procedural default on the public trial claim. *Coleman*, 501 U.S. at 750. As was true in *Owens*, "[w]e believe that these showings of prejudice overlap , and we [address] them simultaneously." 483 F.3d at 64 n.13; *Cf. Strickler v. Greene,* 527 U.S. 263, 282 (1999) ("In this case, cause and prejudice [for procedural default] parallel two of the three components of the alleged [trial error] itself.")

[8] While defense counsel's objection triggers the trial court's duty to make factual findings under *Waller*, the court could have averted the issues presented in this appeal by conducting a detailed inquiry before agreeing to the prosecutor's request. The Supreme Court has made clear that trial closures infringe upon an important structural guarantee and that they should be rare. *Waller*, 467 U.S. at 45. Moreover, while First Amendment issues were not raised in this case, the public and the press also have a compelling First Amendment interest in a public trial. *See Press-Enterprise*, 464 U.S. at 509-10 ("[The] circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one.") (internal quotation marks and citation omitted). Given the great, though intangible, societal loss that flows from closing courthouse doors, *Waller*, 467 U.S. at 50 n.9, a prudent court should carefully scrutinize a party's request before agreeing to close a courtroom.

————————————

**DISSENT**

————————————

KETHLEDGE, Circuit Judge, dissenting. In defending a murder charge, it is a bad idea, I think, to leave the judge with a smoldering suspicion that your client had a role in killing two of the prosecution's key witnesses before trial. A lawyer who minimizes that danger—by consenting to, rather than fighting, closure of the courtroom during the testimony of three surviving witnesses, out of a total of 18 testifying witnesses in the case—does not thereby render constitutionally ineffective assistance of counsel. That is all the more true, in my opinion, when there is not a shred of evidence that the closure had the slightest effect on the trial's outcome.

The majority concludes otherwise. The majority suggests that the closure fight here was one worth having—indeed, that it was constitutionally mandated—its ethereal upside and concrete downside notwithstanding. The majority then sidesteps the absence of any actual prejudice resulting from Johnson's consent to the closure—and with it, the plainly stated actual-prejudice requirement of *Strickland v. Washington*, 466 U.S. 668 (1984)—by holding that Johnson need not show any prejudice at all in support of his ineffective-assistance-of-counsel claim. That holding is not supported by "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), which means that we are without power to impose it on the Michigan state courts in this habeas case. I respectfully dissent.

*        *        *

The majority and I agree that Johnson's habeas petition fails unless he can prove his ineffective-assistance-of-counsel claim. To prove that claim, Johnson must first show that his "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That showing requires, of course, proof that counsel committed errors in the first place. Second, Johnson "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. We review for an abuse of

discretion a district court's decision whether to hold an evidentiary hearing on these issues. *See Ivory v. Jackson*, 509 F.3d 284, 297 (6th Cir. 2007).

The district court did not abuse its discretion here, because Johnson's claim clearly fails on both grounds. First, prior to trial, two witnesses identified Johnson as the shooter in a barrage that left Carlos Davis dead, Larry Lewis and James Mathis wounded, and Robert Richards untouched by the bullets that Johnson fired toward him. Richards was unavailable to testify at trial—because he had been shot to death, in bed, after his testimony at Johnson's preliminary exam. Another prosecution witness, Elvin Robinson, was shot to death before he was able to testify at Johnson's exam. At trial, the prosecution moved to close the courtroom during the testimony of three surviving witnesses: Damon Ramsuer, who was the sole surviving witness to have identified Johnson as the shooter; and Lewis and Mathis, two of the persons Johnson shot. In support of its motion, the prosecution explained that all three witnesses were "literally terrified" and were "cowering, refusing to come to court, even under threat of being arrested, because they [were] afraid for their lives." Johnson's counsel chose not to pick this particular fight—truly a strategic decision if there ever was one—and, after consulting with Johnson, affirmatively agreed to the three-witness closure.

The question before us is whether that decision was so far outside the bounds of competent representation as to amount to constitutionally ineffective assistance of counsel. I do not think the decision can possibly be seen that way. Having reviewed the trial transcript, it seems to me instead that the decision was *correct*. Johnson's counsel essentially agreed to close the courtroom during the testimony of three witnesses, out of a total of 18 witnesses at trial. Strategically the net effect of that closure, as Johnson now describes it, was that several of his "female relatives" did not witness the testimony of those three witnesses. In return, Johnson's counsel deflected the trial judge from a line of inquiry—as to why, exactly, these three witnesses were so terrified to testify against Johnson—that almost certainly would have reflected poorly on his client. That avoidance appears all the wiser given that it emerged at Johnson's sentencing—and perhaps could have emerged sooner, had Johnson's counsel fought the closure—that

Richards was shot to death with ammunition from the same lot that Johnson used to kill Davis and wound Lewis and Mathis. The Constitution, suffice it to say, permitted this strategic choice.

Second, there is no evidence in the record—which includes the entire transcript of Johnson's trial—that Johnson's consent to closure as to three witnesses had any effect on the outcome of his murder trial. The majority does not assert the contrary. Instead, the majority holds, "[b]ecause the right to a public trial is a structural guarantee, if the closure were unjustified or broader than necessary, prejudice would be presumed." Maj. Op. at 10. In so holding the majority drives right past the distinction between a *Waller* claim and a *Strickland* one. What the majority says is true enough for a *Waller* claim, but Johnson's petition undisputedly turns on a *Strickland* one; and *Strickland* repeatedly and unequivocally says that *actual prejudice* is required. *See, e.g.*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding would have been different*") (emphasis added); *id.* at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding").

Reasonable jurists can disagree as to whether, when a defendant asserts an ineffective-assistance claim based on an underlying violation of his right to a public trial, the *Waller* definition of prejudice should trump the *Strickland* one, or vice versa. In a lengthy analysis of this very issue, the Eleventh Circuit held that the *Strickland* actual-prejudice requirement applies. *See Purvis v. Crosby*, 451 F.3d 734, 743 (11th Cir. 2006). (Our decision today directly conflicts with that decision.) The First Circuit has held that the *Waller* definition prevails, *see Owens v. United States*, 483 F.3d 48, 64-66 & n.14 (1st Cir. 2007)—although, critically, it did so in considering a challenge to an underlying *federal* conviction, *see* 28 U.S.C. § 2255, and thus was not limited, as we are here, to deciding whether "*clearly established* Federal law, as determined by the Supreme Court," requires that result. *Id.* § 2254(d)(1) (emphasis added). But I simply do not see how, when Johnson presents a *Strickland* claim and *Strickland* by its terms imposes an

*actual*-prejudice standard, we can hold that clearly established Supreme Court precedent required the Michigan state courts to apply a presumed-prejudice standard instead.

What has been clearly established for decades is that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.  Johnson has not touched that presumption here.  I respectfully dissent.