**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0740n.06

No. 11-3696

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 09, 2013*

DEBORAH S. HUNT, Clerk

STEVE NOLAN, )
)
    Petitioner-Appellant, )   ON APPEAL FROM THE
)   UNITED STATES DISTRICT
v. )   COURT FOR THE NORTHERN
)   DISTRICT OF OHIO
CHRISTINE MONEY, WARDEN, )
)
    Respondent-Appellee. )   **O P I N I O N**
)
_____ )

Before:  WHITE and DONALD, Circuit Judges, and VARLAN, Chief District Judge.*

THOMAS A. VARLAN, Chief District Judge.  An Ohio grand jury charged Petitioner Steve Nolan ("Petitioner") with attempted kidnapping, in violation of Ohio Rev. Code §§ 2923.02 and 2905.01.  Before trial, Petitioner's counsel requested a voir dire of the minor victim and the police officers who performed the identification line-up in order to determine whether to move to suppress evidence of the victim's identification of Petitioner.  Although the officers testified in open court, the trial court, upon the prosecutor's request, adjourned the hearing to its chambers for the examination of the victim, excluding Petitioner and the public from that portion of the hearing because of potential intimidation of the victim.  Petitioner never moved to suppress the identification.  After a jury trial, at which the victim testified, Petitioner was convicted and sentenced to four years' imprisonment.

_____

*The Honorable Thomas A. Varlan, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

After exhausting his state appeals process, Petitioner filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254, asserting among other arguments that he was denied his Sixth Amendment rights to be present and to a public trial when the trial court conducted the examination of the victim in the court's chambers. In a report and recommendation, a magistrate judge found Petitioner was not entitled to relief. Petitioner filed objections, but the district court agreed with the magistrate judge's conclusion, although upon different grounds with respect to Petitioner's Sixth Amendment challenge.

Petitioner then filed an appeal. This court remanded the case to the district court for the purpose of determining whether to grant a certificate of appealability, and the district court granted a certificate with respect to whether Petitioner was denied his Sixth Amendment rights to be present and to a public trial when the trial court conducted an examination of the key witness in the court's chambers and excluded Petitioner from that hearing. Because the state court's rejection of Petitioner's claim was not an unreasonable application of clearly established federal law, we **AFFIRM**.

## I. BACKGROUND

On the morning of March 11, 2005, Stephanie Martin ("Martin"), a high school student at Glenville High School, was waiting at the bus stop at Arbor Road and St. Clair Avenue in Cleveland, Ohio. At approximately 7:30 a.m., a black Jeep Cherokee with tinted windows and white numbers and letters pulled into the parking lot behind the bus stop. The driver asked Martin if he could talk to her and Martin said he could not. The driver repeated the question, said that he could put money into Martin's pocket, and told Martin to get into the vehicle. Martin again said no. The driver then

got out of the vehicle and walked toward Martin. Martin ran away, but the driver chased her, telling her to get into the vehicle. Martin ran toward the left and the driver ran in the same direction after her. Martin continued running, but the driver returned to his car and left the scene. Martin fled to her home, and her mother called the police. Martin described the vehicle and the man to the police, who she said was wearing a brown jacket, blue cap, blue jeans, and blue Timberland boots.

The case received media attention and two days later, the police received an anonymous tip that the vehicle was on Columbia Road. Officer Jerry Tucker responded to the tip. While on Columbia Road, Officer Tucker was flagged down by a male, who indicated a suspicious car with white letters and numbers was in a nearby driveway. Officer Tucker went to that house, where a woman answered the door. Petitioner then came to the door and admitted he owned the vehicle in the driveway. Officer Tucker believed Petitioner matched the description provided by Martin and therefore asked Petitioner to step outside and answer a few questions. Petitioner voluntarily exited the house and was arrested by Officer Tucker. Petitioner's car was towed, and blankets and alcohol were removed from the passenger compartment.

Martin was later shown pictures of Petitioner's vehicle and identified it as the vehicle driven by the man who chased her. Lieutenant Gail Maxwell then conducted an identification line-up. She selected five men of similar height, weight, and appearance to participate in a line-up with Petitioner. Martin identified Petitioner as the man who chased her. At the conclusion of the line-up, Petitioner lingered and appeared to stare through the glass to where Martin would have been standing during the identification. Martin became frightened and fled crying.

3

Petitioner was charged with attempted kidnapping, in violation of Ohio Rev. Code §§ 2923.02 and 2905.01, and pleaded not guilty. Prior to trial, to determine whether he would file a motion to suppress the line-up identification, Petitioner requested a voir dire of Martin and the three police officers who performed the line-up. Two of the officers involved with the line-up testified in open court during the voir dire hearing. Upon request of the prosecuting attorney, the judge then adjourned the hearing to his chambers for examination of Martin. The judge explained that the examination would be outside Petitioner's presence "'in order to accommodate the potential intimidation of the witness and the balance of the defendant's right to confrontation, which this is simply a hearing and not a trial.'" *State v. Nolan*, No. 88111, 2007 WL 853217, at *5 (Ohio Ct. App. Mar. 22, 2007). Petitioner's attorney, however, was present during the examination. Martin testified, the hearing adjourned, and the third officer was examined in open court on a later date. At the close of the hearing, the judge informed Petitioner that he had thirty days to file a motion to suppress the identification, but Petitioner did not do so.

Martin testified in open court at trial and identified Petitioner as the man who chased her and as the man she identified in the line-up. Petitioner was convicted of attempted kidnapping and sentenced to four years in prison.

Petitioner filed an appeal to the Eighth District Court of Appeals of Ohio, raising seven assignments of error, including that he was denied his constitutional right to be present and his right to a public trial when the court conducted an examination of Martin in the court's chambers. The state appellate court, in a written opinion, affirmed the conviction, but vacated the sentence on grounds not relevant here and remanded the case for re-sentencing. Petitioner filed an application

for reconsideration and a motion for certification of conflict, but these motions were denied without opinion.

Petitioner then filed a timely notice of appeal with the Ohio Supreme Court, presenting six propositions of law, including that he was "denied his constitutional right to be present and his right to a public trial [when] the court conduct[ed] an examination of a witness in the chambers." (R. 17 at 4–5). The Ohio Supreme Court denied leave and dismissed the appeal as not involving any substantial constitutional question. *See State v. Nolan*, 872 N.E.2d 953 (Ohio 2007) (table). Subsequently, the trial court re-sentenced Petitioner to the same four-year prison term it had imposed prior to the remand.[1] *State v. Nolan*, No. 90646, 2008 WL 4748658, at *1 (Ohio Ct. App. Oct. 30, 2008). The Court of Appeals of Ohio affirmed this sentence. *Id.* at *4.

Petitioner timely filed a federal habeas petition, presenting five grounds for relief. The third ground was that he was denied his Sixth Amendment rights to be present and to a public trial when the court conducted an examination of Martin in the court's chambers and excluded him. In a report and recommendation, the magistrate judge found Petitioner was not entitled to habeas relief. Petitioner filed objections, but the district court agreed with the magistrate judge's conclusion, although upon different grounds with respect to the third ground for relief, and denied the petition.

Petitioner timely appealed, and this court remanded the case to the district court for the sole purpose of determining whether to grant a certificate of appealability. The district court found

---

[1]Petitioner has served his four-year term of imprisonment and "is presently serving his three-year term of post-release control sanctions under the supervision of the parole authority, which term is due to expire in January 2015." (Appellee Br. 5).

Petitioner made "a substantial showing of the denial of a constitutional right with respect to an issue raised by Ground Three in his Petition[,]" namely, "whether Petitioner was denied his Sixth Amendment right to be present and his right to a public trial when the trial court conducted an examination of the key witness in the court's chambers and excluded Petitioner from that hearing." (R. 24 at 1–2). It thus issued a certificate of appealability with respect to that issue. The district court did not, however, issue "a certificate of appealability for the other issue raised by Ground Three—whether Petitioner was denied his right to confront an adverse witness when this hearing was conducted in his absence—because Petitioner's attorney was present at the hearing." (*Id.* at 2). The district court denied a certificate of appealability for all other grounds raised by Petitioner, finding Petitioner "failed to make a substantial showing of the denial of a constitutional right." (*Id.*).

Petitioner then filed with this court a motion to expand the certificate of appealability to include three other issues. This court denied Petitioner's request and ordered that the case proceed only on the issue certified by the district court. Petitioner thereafter filed a motion for reconsideration of the order, which this court denied.

## II. STANDARD OF REVIEW

We review de novo the legal basis for a district court's dismissal of a habeas petition. *Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007). The factual findings underlying the district court's analysis, on the other hand, will not be set aside unless those findings are clearly erroneous. *Id.*

Because Petitioner filed his petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), that statute governs our review of the

case. A writ of habeas corpus may not be granted under AEDPA for any claim that was adjudicated on the merits in state court unless the adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). For the purposes of AEDPA, this court reviews the last state-court decision on the merits, which in this case is the decision of the Eighth District Court of Appeals of Ohio: *State v. Nolan*, No. 88111, 2007 WL 853217 (Ohio Ct. App. Mar. 22, 2007). *See Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006). The Supreme Court has recognized that AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, —, 130 S. Ct. 1855, 1862 (2010) (footnote and internal citations omitted).

Under the "contrary to" clause of § 2254(d)(1), a federal court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "If the state-court decision identifies the correct governing legal principle in existence at the time, [however,] a federal court must assess whether the decision unreasonably applies that principle to the facts of the [petitioner's] case" under the "unreasonable application" clause of § 2254(d)(1). *Cullen v.*

*Pinholster*, — U.S. —, —, 131 S. Ct. 1388, 1399 (2011) (citation and internal quotation marks omitted).

Under the "unreasonable application" clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. *Williams*, 529 U.S. at 413. When assessing unreasonableness, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable." *Id.* at 409.

In determining whether a state-court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings of the Supreme Court's decisions "as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (internal quotation mark omitted); *see also Green v. Fisher*, — U.S. —, 132 S. Ct. 38 (2011) (holding that clearly established federal law as determined by the Supreme Court under AEDPA is the law at the time of the state-court adjudication on the merits, not at the time the conviction becomes final). The reviewing court, however, may look to lower courts of appeals decisions "to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010) (alteration in original and internal quotation marks omitted).

## III. DISCUSSION

Petitioner argues he was denied his Sixth Amendment right to a public trial when the trial

court conducted an examination of the primary witness against him in the court's chambers and

excluded him from that hearing.[2]  The Court of Appeals of Ohio determined that the right to a public

trial was not violated because the closure of the portion of the hearing during which Martin testified

"did not affect the fairness, integrity, or public reputation of the trial . . . ." *Nolan*, 2007 WL 853217,

at *5.  In reaching this conclusion, the state appellate court relied upon *Waller v. Georgia*, 467 U.S.

39 (1984), in which the Supreme Court analyzed whether a suppression hearing was improperly

closed.  The state appellate court reasoned:

> Here, the prosecuting attorney requested closure of the voir dire hearing because
> Martin became frightened and fled the line up after observing defendant, who
> stopped and tried to look through the glass at the witness.  The police officers
> testified in court and in the presence of defendant but the trial court adjourned the
> proceedings in order for Martin to testify in chambers and outside of the presence of
> defendant.  The trial court held that the action was necessary "in order to
> accommodate the potential intimidation of the witness and the balance of the
> defendant's right to confrontation, which this is simply a hearing and not a trial."
> The trial court then instructed that defendant had 30 days in which to file a motion
> to suppress the identification but he did not do so.  Moreover, later at trial, Martin did
> identify defendant in open court, with defendant present and she again testified to
> seeing defendant at the bus stop and to identifying him in the line up.  We therefore
> find that the closure did not affect the fairness, integrity, or public reputation of the
> trial . . . and there is therefore no reason to suspect that a new voir dire hearing would

---

[2]Petitioner also asserts he was denied "his Sixth Amendment right of to [sic] directly encounter adverse witnesses." (Appellant Br. 12, 14).  We decline to address this Confrontation-Clause argument because the district court expressly stated that it was not issuing a certificate of appealability with respect to "whether Petitioner was denied his right to confront an adverse witness when [the] hearing was conducted in his absence . . . because Petitioner's attorney was present at the hearing." (R. 24 at 2).

materially change the position of the parties. We find the foregoing sufficient to meet the guidelines set forth in *Waller* . . . .

*Id.* (citations omitted).

The Sixth Amendment provides that a defendant shall enjoy "the right to a . . . public trial." U.S. Const. amend. VI. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller*, 467 U.S. at 46 (internal quotation marks omitted). In interpreting this amendment, the Supreme Court has determined that the right applies in contexts other than trial, including suppression hearings, *Waller*, 467 U.S. at 47, and voir dire of jurors, *Presley v. Georgia*, 558 U.S. 209, —, 130 S. Ct. 721, 724 (2010). The parties have not identified a case addressing the public-trial right in the context of a scenario factually similar to this case and we therefore assume for purposes of this appeal that the right attached to the hearing at issue. So assuming, we must determine whether the state appellate court's determination that the right was not violated was contrary to, or an unreasonable application of, clearly established federal law. We find that it was not.

Violation of the right to a public trial is a structural error, meaning it is not subject to harmless-error review. *Waller*, 467 U.S. at 49 n.9; *Johnson v. Sherry*, 586 F.3d 439, 443 (6th Cir. 2009). A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). While an important structural right, *Johnson*, 586 F.3d at 444, the right to a public trial is not

absolute, and closure of a courtroom may be justified by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest," *Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984) (internal quotation marks omitted).

In *Waller*, the Supreme Court set forth a four-part test for determining whether a courtroom closure violates a defendant's right to a public trial. A closure does not violate the Sixth Amendment if: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considered reasonable alternatives to closing the proceeding; and (4) the trial court made adequate findings to support the closure. *Waller*, 467 U.S. at 48. While the state appellate court did not specifically address each part of this test, we nonetheless find that, even assuming Petitioner's right to a public trial was violated, the state appellate court did not unreasonably apply *Waller* in determining Petitioner's right was not violated because Petitioner's remedy for the violation would be a public voir dire examination of Martin, and granting a new, public voir dire hearing would be futile.[3]

In *Waller*, the Supreme Court instructed that "the remedy [for violation of the right to a public hearing] should be appropriate to the violation." 467 U.S. at 49–50. The Court addressed the

---

[3]Although we do not address each *Waller* requirement, a trial court's failure to consider reasonable alternatives to courtroom closure when a defendant objects violates *Waller*'s guidelines. *See Presley*, 558 U.S. at 214 (rejecting the proposition that it was an open question under the Supreme Court's precedents whether the trial court must consider alternatives to closure absent an opposing party's proffer of some alternatives, and explaining that it is "settle[d]" law under *Waller* that "the trial court must consider reasonable alternatives to closing the proceeding").

closure of a suppression hearing, and finding it was unjustified, remanded the case to state court. It directed: "A new trial need be held only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the positions of the parties." *Id.* at 50. *See also Brown v. Kuhlmann*, 142 F.3d 529, 539–44 (2d Cir. 1998) (finding new trial disproportionate remedy for erroneous courtroom closure).

Here, Martin testified at trial and defense counsel had a full opportunity to cross-examine her about the line-up identification in Petitioner's presence. This, in conjunction with the fact that Petitioner does not contend that the trial examination of Martin revealed any basis for a suppression motion, leads us to conclude that a public examination of Martin during the voir dire hearing would be duplicative of the examination that defense conducted at trial. Any constitutional violation, therefore, did not "necessarily render the criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence," *Neder v. United States*, 527 U.S. 1, 9 (1999) (emphasis omitted), and granting a new hearing would not materially change the parties' positions, *Waller*, 467 U.S. at 50.

Moreover, courts have held that the need to protect a witness from intimidation justifies closure of the courtroom. *See*, *e.g.*, *United States v. Brazel*, 102 F.3d 1120, 1156 (11th Cir. 1997) (finding no Sixth Amendment violation where the trial court implemented a procedure requiring any individuals who wanted to enter the courtroom to first provide identification because the judge had observed individuals entering the courtroom and staring at witnesses who were on the stand). The trial court found it was appropriate for Martin to testify in chambers with defense counsel present but to exclude Petitioner "in order to accommodate the potential intimidation of the witness . . . ."

*State v. Nolan*, 2007 WL 853217, at *5. Although Petitioner argues there is nothing in the record to support this determination, an examination of the record reveals the contrary. The testimony of two officers who testified in open court indicated that Martin "looked very frightened" during the line-up, (R. 6-6 at 41:5–6), that Martin became "hysterical" and ran from the room upon seeing Petitioner, (*id.* at 22:10–20), and that Petitioner lingered after the conclusion of the line-up, appearing to "stare a hole through the window" where Martin would have been located during the identification, (*id.* at 43:20–44:7).

In addition, while the trial court conducted the voir dire in chambers, the duration of the closure was brief, as it pertained to the examination of only one of four witnesses. There was also a transcript of the hearing, so the public could learn what took place while the court was closed. It further appears that the evidence presented during the closure was cumulative of the testimony of the officers who testified in open court. *See Waller v. United States*, No. 1:08-CV-936, 2010 WL 750219, at *10 (N.D. Ohio Feb. 26, 2010) (addressing the factors courts examine when considering whether the closure is no broader than necessary, including, among other things, the duration of the closure, whether the public can learn what took place while the court was closed, and whether the evidence presented during the closure was cumulative).

Accordingly, and recognizing that "fairminded jurists could disagree" whether petitioner's right to a public trial was violated when the trial court conducted a portion of the voir dire hearing in chambers without Petitioner, we find that the state appellate court did not unreasonably apply *Waller* in determining Petitioner's right to a public trial was not violated. *See Harrington v. Richter*, — U.S. —, 213 (2011) ("A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").

## IV. CONCLUSION

For these reasons, we **AFFIRM** the district court's judgment.

**HELENE N. WHITE, Circuit Judge, concurring.** I concur in the affirmance on the basis that the Ohio appellate court's decision was not an unreasonable application of *Waller v. Georgia*, 467 U.S. 39 (1984), because Nolan's remedy for the alleged erroneous courtroom closure would be a public voir dire hearing, and granting a new, public hearing to examine Martin would be futile.

I write separately, however, to address the trial court's justification for the courtroom closure. In *Waller*, the Supreme Court held that in order to justify a courtroom closure,

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

467 U.S. at 48. The majority correctly notes that "a trial court's failure to consider reasonable alternatives to courtroom closure when a defendant objects violates *Waller*'s guidelines." Maj. Op. 11 n. 3 (citing *Presley v. Georgia*, 558 U.S. 209, 214 (2010) (per curiam)). "The conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear . . . from [the Supreme] Court's precedents." *Presley*, 558 U.S. at 214.

Here, the trial court made no findings to support a determination that the complete courtroom closure during Martin's examination at the hearing was necessary as opposed to a more narrowly tailored alternative. The trial court's failure to consider reasonable alternatives to closure as required under *Waller* cannot be cured by its proper consideration of the remaining *Waller* factors. *See id.* at 216 ("[E]ven assuming, *arguendo*, that the trial court had an overriding interest in closing *voir dire*, it was still incumbent upon it to consider all reasonable alternatives to closure. It did not, and

15

that is all this Court needs to decide [to warrant reversal of the state court's judgment to the contrary].").