LEVINE *v.* UNITED STATES.

No. 164.   Argued March 22, 1960.—Decided May 23, 1960.

*Myron L. Shapiro* argued the cause for petitioner. With him on the brief was *J. Bertram Wegman.*

*Philip R. Monahan* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey* and *Robert S. Erdahl.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a prosecution for contempt arising from petitioner's refusal to answer a series of questions propounded to him by a federal grand jury. In every respect but one, this case is a replica of *Brown* v. *United States,* 359 U. S. 41, and as to all common issues it is controlled by that case. In *Brown,* however, we expressly declined to decide the effect of claimed "secrecy" upon proceedings culminating in the petitioner's sentencing for contempt, "because the record does not show this to be the fact." 359 U. S., at 51, n. 11. Here, it appears that the contemptuous conduct, the adjudication of guilt, and the imposition of sentence all took place after the public had been excluded from the courtroom, in what began and was continued as "a Grand Jury proceeding." The effect of this continuing exclusion in the circumstances of the case is the sole question presented.

On the morning of April 18, 1957, pursuant to a subpoena, petitioner appeared as a witness before a federal grand jury in the Southern District of New York engaged in investigating violations of the Interstate Commerce Act. He was asked six questions relevant to the grand jury's investigation. After consultation with his attorney, who was in an anteroom, he refused to answer them on the ground that they might tend to incriminate him. He persisted in this refusal after having been directed to answer by the foreman of the grand jury and advised by

government counsel that applicable statutes gave him complete immunity from prosecution concerning any matter as to which he might testify. See 49 U. S. C. § 305 (d).

Later that day the grand jury, government counsel, petitioner and his attorney appeared before Judge Levet, sitting in the District Court for the Southern District of New York, the grand jury having sought "the aid and assistance of the Court, in a direction to a witness, Morry Levine, who has this morning appeared before the Grand Jury and declined to answer certain questions that have been put to him." The record of the morning's proceedings before the grand jury was read. After argument by counsel, the judge ruled that the adequate immunity conferred by statute deprived petitioner of the right to refuse to answer the questions put to him. Petitioner was ordered to appear before the grand jury on April 22, and was directed by the court then to answer the questions.

On the morning of April 22 petitioner appeared before the grand jury. The questions were again put to him and he again refused to answer. Once again the grand jury, government counsel, petitioner and his counsel went before Judge Levet, for "the assistance of the Court in regard to the witness Morry Levine." At this time the record shows the following:

"The Court: Will those who have no other business in the courtroom please leave now? I have a Grand Jury proceeding.

"The Clerk: The Marshal will clear the court room.

"(Court room cleared by the Marshals.)"

Petitioner, his counsel, the grand jury, government counsel and the court reporter remained. Petitioner objected to further participation by the court in the process of

compelling his testimony, except according to the procedures prescribed by Rule 42 (b) of the Federal Rules of Criminal Procedure. That provision, which relates to contempts generally, excluding those "committed in the actual presence of the court" as to which the judge certifies "that he saw or heard the conduct constituting the contempt," provides in effect for a conventional trial. In petitioner's view the court was compelled to regard his contempt, if any, as having already been committed out of the presence of the court, through petitioner's disobedience before the grand jury that morning of the court's order of April 18.

The judge, however, did not treat petitioner's renewed refusal to answer the grand jury's questions as a definitive contempt. He chose to proceed just as he had two weeks earlier in the case of Brown, reviewed here as *Brown v. United States, supra,* 359 U. S. 41. The morning's grand jury proceedings, showing petitioner's refusals to answer, were read, and petitioner was ordered by the judge to take the stand. The court indicated it was proceeding as "[t]he Court and the Grand Jury" "in accordance with Rule 42 (a)," which relates to the procedure in cases of contempt "committed in the actual presence of the court." Over objection, the court then put to petitioner the six questions which he had refused to answer when propounded by the grand jury. Petitioner again refused to answer these questions on the claim of the privilege against self-incrimination. In answer to a question by the court he stated that he would continue to refuse on that ground should the grand jury again put the questions to him. Government counsel asked that petitioner be adjudged in contempt "committed in the physical presence of the Judge." The court asked for reasons "why I should not so adjudicate this witness in contempt." Petitioner's counsel made three

points: (1) that the procedures had not been in accordance with "the requirements of due process"; (2) that the procedures had not followed the requirements of Rule 42 (b) of the Federal Rules of Criminal Procedure; and (3) that, on the merits of the charge, the statutory immunity was not sufficiently extensive to deprive petitioner of his privilege not to answer. No reference was made to the exclusion of the general public from the proceedings. Petitioner was adjudicated in contempt and, after submission by counsel of views regarding sentence, one year's imprisonment was imposed. The conviction was affirmed by the Court of Appeals, 267 F. 2d 335, and we granted certiorari, 361 U. S. 860, limiting our grant to the question left open in *Brown* v. *United States*, namely, whether the "secrecy" of the proceedings offended either the Due Process Clause of the Fifth Amendment of the Constitution or the public-trial requirement of the Sixth Amendment.

The course of proceeding followed by the District Court in this case for compelling petitioner's testimony was the one approved in *Brown*. Specifically, it was established by that case that, after petitioner had disobeyed the court's direction to answer the grand jury's questions before that body, it was proper for the court, upon application of the grand jury, (1) to disregard any contempt committed outside its presence; (2) to put the questions directly to petitioner in the court's presence as well as in the presence of the grand jury; and (3) to punish summarily under Rule 42 (a) as a contempt committed "in the actual presence of the court" petitioner's refusal thereupon to answer.

It was surely not error for the judge initially to have cleared the courtroom on April 22 when the grand jury appeared before him for the second time seeking his "assistance . . . in regard to the witness Morry Levine."

The secrecy of grand jury proceedings is enjoined by statute (see 18 U. S. C. § 1508, and Federal Rules of Criminal Procedure 6 (d) and (e)), and a necessary initial step in the proceedings was to read the record of the morning's grand jury proceedings. The precise question involved in this case, therefore, is whether it was error, once the courtroom had been properly, indeed necessarily, cleared, for petitioner's contempt, summary conviction and sentencing to occur without inviting the general public back into the courtroom.

From the very beginning of this Nation and throughout its history the power to convict for criminal contempt has been deemed an essential and inherent aspect of the very existence of our courts. The First Congress, out of whose 95 members 20, among them some of the most distinguished lawyers, had been members of the Philadelphia Convention, explicitly conferred the power of contempt upon the federal courts. Section 17 of the Judiciary Act of 1789, 1 Stat. 73, 83. That power was recognized by this Court as early as 1812, in a striking way. *United States* v. *Hudson*, 7 Cranch 32, 34. As zealous a guardian of the procedural safeguards of the Bill of Rights as the first Mr. Justice Harlan, in sustaining the power summarily to punish contempts committed in the face of the court, described the power in this way: "the offender may, in . . . [the court's] discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; . . . such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions." *Ex parte Terry,* 128 U. S. 289, 313 (1888). It is a particular exercise of this power of summary punishment of contempt committed in the court's presence which is at issue in this case. This Court has not been wanting in

effective alertness to check abusive exercises of that power by federal judges. See *Cooke* v. *United States,* 267 U. S. 517; *Offutt* v. *United States,* 348 U. S. 11. It would, however, be throwing the baby out with the bath to find it necessary, in the name of the Constitution, to strangle a power "absolutely essential" for the functioning of an independent judiciary, which is the ultimate reliance of citizens in safeguarding rights guaranteed by the Constitution.

Procedural safeguards for criminal contempts do not derive from the Sixth Amendment. Criminal contempt proceedings are not within "all criminal prosecutions" to which that Amendment applies. *Ex parte Terry,* 128 U. S. 289, 306–310; *Cooke* v. *United States,* 267 U. S. 517, 534–535; *Offutt* v. *United States,* 348 U. S. 11, 14. But while the right to a "public trial" is explicitly guaranteed by the Sixth Amendment only for "criminal prosecutions," that provision is a reflection of the notion, deeply rooted in the common law, that "justice must satisfy the appearance of justice." *Offutt* v. *United States,* 348 U. S. 11, at 14. Accordingly, due process demands appropriate regard for the requirements of a public proceeding in cases of criminal contempt, see *In re Oliver,* 333 U. S. 257, as it does for all adjudications through the exercise of the judicial power, barring narrowly limited categories of exceptions such as may be required by the exigencies of war, see Amendment to Rule 46 of the Admiralty Rules, June 8, 1942, 316 U. S. 717, revoked May 6, 1946, 328 U. S. 882, or for the protection of children, see 18 U. S. C. § 5033.

Inasmuch as the petitioner's claim thus derives from the Due Process Clause and not from one of the explicitly defined procedural safeguards of the Constitution, decision must turn on the particular circumstances of the case, and not upon a question-begging because abstract and

absolute right to a "public trial." Cf. *Snyder* v. *Massachusetts*, 291 U. S. 97, 114–117. The narrow question is whether, in light of the facts that the grand jury, petitioner and his counsel were present throughout and that petitioner never specifically made objection to the continuing so-called "secrecy" of the proceedings or requested that the judge open the courtroom, he was denied due process because the general public remained excluded from the courtroom.

The grand jury is an arm of the court and its *in camera* proceedings constitute "a judicial inquiry." *Hale* v. *Henkel*, 201 U. S. 43, 66. "The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its findings." *Cobbledick* v. *United States*, 309 U. S. 323, 327. Unlike an ordinary judicial inquiry, where publicity is the rule, grand jury proceedings are secret. In the ordinary course, therefore, contempt of the court committed through a refusal to answer questions put before the grand jury does not occur in a public proceeding. Publicity fully satisfying the requirements of due process is achieved in such a case when a public trial upon notice is held on the charge of contempt under Rule 42 (b) of the Federal Rules of Criminal Procedure.

*Brown* v. *United States, supra,* established that a grand jury as an arm of the court has available to it another course to vindicate its authority over a lawlessly recalcitrant witness. Appeal may be made to the court under whose aegis the grand jury sits to have the witness ordered to answer the grand jury's inquiries in the judge's physical presence, so that the court's persuasive exertion to induce obedience, and its power summarily to commit for contempt should its authority be ignored, may be brought

to bear upon him. Since such a summary adjudication of contempt occurs in the midst of a grand jury proceeding, a clash may arise between the interest, sanctioned by history and statute, in preserving the secrecy of grand jury proceedings, and the interest, deriving from the Due Process Clause, in preserving the public nature of court proceedings.

In the present case grand jury secrecy freely gave way insofar as petitioner's counsel was present and was permitted to be fully active in behalf of his client throughout the proceedings before Judge Levet. Petitioner had ample notice of the court's intention to put the grand jury's questions directly to him, and to proceed against him summarily should he persist in his refusal to answer. Had petitioner requested, and the court denied his wish, that the courtroom be opened to the public before the final stage of these proceedings we would have a different case. Petitioner had no right to have the general public present while the grand jury's questions were being read. However, after the record of the morning's grand jury proceedings had been read, and the six questions put to petitioner with a direction that he answer them in the court's presence, there was no further cause for enforcing secrecy in the sense of excluding the general public. Having refused to answer each question in turn, and having resolved not to answer at all, petitioner then might well have insisted that, as summary punishment was to be imposed, the courtroom be opened so that the act of contempt, that is, his definitive refusal to comply with the court's direction to answer the previously propounded questions, and the consequent adjudication and sentence might occur in public. See *Cooke* v. *United States,* 267 U. S. 517, 534–536. To repeat, such a claim evidently was not in petitioner's thought, and no request to open the courtroom was made at any stage of the proceedings.

The continuing exclusion of the public in this case is not to be deemed contrary to the requirements of the Due Process Clause without a request having been made to the trial judge to open the courtroom at the final stage of the proceeding, thereby giving notice of the claim now made and affording the judge an opportunity to avoid reliance on it. This was not a case of the kind of secrecy that deprived petitioner of effective legal assistance and rendered irrelevant his failure to insist upon the claim he now makes. Counsel was present throughout, and it is not claimed that he was not fully aware of the exclusion of the general public. The proceedings properly began out of the public's presence and one stage of them flowed naturally into the next. There was no obvious point at which, in light of the presence of counsel, it can be said that the onus was imperatively upon the trial judge to interrupt the course of proceedings upon his own motion and establish a conventional public trial. We cannot view petitioner's untenable general objection to the nature of the proceedings by invoking Rule 42 (b) as constituting appropriate notice of an objection to the exclusion of the general public in the circumstances of this proceeding under Rule 42 (a).

This case is wholly unlike *In re Oliver,* 333 U. S. 257. This is not a case where it is or could be charged that the judge deliberately enforced secrecy in order to be free of the safeguards of the public's scrutiny; nor is it urged that publicity would in the slightest have affected the conduct of the proceedings or their result. Nor are we dealing with a situation where prejudice, attributable to secrecy, is found to be sufficiently impressive to render irrelevant failure to make a timely objection at proceedings like these. This is obviously not such a case. Due regard generally for the public nature of the judicial process does not require disregard of the solid demands of the fair

administration of justice in favor of a party who, at the appropriate time and acting under advice of counsel, saw no disregard of a right, but raises an abstract claim only as an afterthought on appeal.

*Affirmed.*

MR. JUSTICE BLACK, whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS join, dissenting.

The Court here upholds the petitioner's conviction and imprisonment for contempt of court in refusing to answer grand jury questions, although admitting that "the contemptuous conduct, the adjudication of guilt, and the imposition of sentence all took place after the public had been excluded from the courtroom, in what began and was continued as 'a Grand Jury proceeding.'" Stated not quite so euphemistically the Court is simply saying that this petitioner was summarily convicted and sentenced to a one-year prison term after a "trial" from which the public was excluded—a governmental trial technique that liberty-loving people have with great reason feared and hated in all ages.

This Court condemned such secret "trials" 12 years ago in the case of *In re Oliver, 333 U. S. 257.* There Oliver had been convicted by a Michigan state court and sentenced to jail for 60 days on a charge of contempt based on his refusal to answer questions propounded by a one-man grand jury. Since the public had been excluded from Oliver's "trial" we were squarely faced with this precise question: "Can an accused be tried and convicted for contempt of court in grand jury secrecy?" *Id.,* at 265–266. Our answer was an emphatic "No," although MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON dissented. We held that Michigan had denied Oliver due process of law guaranteed by the Fourteenth Amendment by convicting him of contempt in a trial from which the

public was excluded. In the course of our decision we said this:

"Counsel have not cited and we have been unable to find a single instance of a criminal trial conducted in camera in any federal, state, or municipal court during the history of this country. Nor have we found any record of even one· such secret criminal trial in England since abolition of the Court of Star Chamber in 1641, and whether that court ever convicted people secretly is in dispute. Summary trials for alleged misconduct called contempt of court have not been regarded as an exception to this universal rule against secret trials, unless some other Michigan one-man grand jury case may represent such an exception." *Id.*, 266.

It seems apparent, therefore, that the Court in upholding petitioner's sentence for contempt here is not only repudiating our *Oliver* decision in whole or in part but is at the same time approving a· secret trial procedure which apologists for the Star Chamber have always been careful to deny even that unlimited and unlamented court ever used. The Court holds that petitioner's secret trial here violated neither the Due Process Clause of the Fifth Amendment nor the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." Certainly the one-year prison sentence for criminal contempt here, like the three-year criminal contempt sentence in *Green* v. *United States,* 356 U. S. 165, has all the earmarks and the consequences of a plain, ordinary criminal prosecution. *Id.*, 193 (dissenting opinion).

In the *Green* case I asked for a reappraisal of the whole doctrine of summary contempt trials. I repeat that "I cannot help but believe that this arbitrary power

to punish by summary process, as now used, is utterly irreconcilable with first principles underlying our Constitution and the system of government it created . . . ." *Green* v. *United States, supra,* at 208. This case illustrates once more the dangers of such trials and the fact that it is nothing but a fiction to say that by labeling a prosecution as one for "contempt" it is changed from that which it actually is—a criminal prosecution for criminal punishment—a procedure which is being used more and more each year as a substitute for trials with Bill of Rights safeguards. The length to which the Court is going in this case—depriving petitioner of the specific public trial safeguard of the Sixth Amendment and holding that he has no more than whatever measure of protection the Court chooses to give him under its flexible interpretation of the Due Process Clause of the Fifth Amendment—is shown by its express declaration that the Sixth Amendment's guarantee of a public trial for those charged with a crime provides no protection at all if the crime charged is labeled "contempt." And the Court cites no case holding that the public trial provision of that Amendment does not apply to criminal contempt proceedings.

I wholly reject the idea that the presence of any power so awesome and arbitrary as "criminal contempt" has grown to be, as nourished by courts, is essential to preserve the independence of the judiciary and I am constrained to say that such a plea of necessity has a strange sound when voiced by our independent judiciary dedicated to fair trials in accordance with ancient safeguards. It is pertinent here to repeat the statement of one of our great lawyers, Edward Livingston, who said: " 'Not one of the oppressive prerogatives of which the crown has been successively stripped, in England, but was in its day, defended on the plea of necessity. Not one of the attempts to destroy them, but was deemed a hazardous

innovation.' " *Green* v. *United States, supra,* at 214 (dissenting opinion).

In the closing part of its opinion the Court indicates that its decision rests to some extent upon a failure of petitioner to make the proper kind of objection to the secrecy of his trial. His objection is referred to as "an abstract claim [raised] only as an afterthought on appeal." The Court thinks that the trial judge was not given "an opportunity to avoid reliance on [the claim now made]." The record shows, however, that on the two occasions petitioner was brought before the court, he requested a trial according to due process, notice and specification of the charges against him, an opportunity to prepare his defenses, an adjournment to obtain compulsory process and subpoena witnesses as well as, in general, proceedings under Rule 42 (b), which undoubtedly calls for a public trial. Petitioner's objection seems sufficient to me to raise the extremely important point of his constitutional right to a public trial.

Despite the Court's decision that petitioner's repeated claims for constitutional procedures were not enough to raise the constitutionality of his secret "trial," there is an intimation in the Court's opinion that maybe at some future time, in some future contempt conviction, the Court would frown upon exclusion of the public from some part of a contempt trial such as this. Here it is said, however, "The proceedings properly began out of the public's presence and one stage of them flowed naturally into the next. There was no obvious point at which, in light of the presence of counsel, it can be said that the onus was imperatively upon the trial judge to interrupt the course of proceedings upon his own motion and establish a conventional public trial." The theory of the Court here seems to be that since grand jury hearings in the grand jury room are secret, the grand jury's proceedings in court against allegedly recalcitrant witnesses may

also be in secret. But surely this cannot be. The grand jury has to report to the judge to invoke his assistance and it did so in this case, bringing Levine along. The grand jury then preferred charges against him to the court. To say that grand jury secrecy extends into the courtroom is wholly to ignore the difference between secrecy of grand jury deliberations and votes, and secrecy of a trial for contempt. Not only are the grand jury deliberations supposed to be free from the intrusions of others, but the idea of a grand jury is one of an independent body, which even the judge shall not be allowed to interfere with or control. See, e. g., *Stirone* v. *United States,* 361 U. S. 212, 218. The grand jury did not enter the courtroom to deliberate or to vote; it went there and took the petitioner there in order to ask the court to compel him to testify under penalty of contempt. At that moment the grand jury deliberations were temporarily ended and a court proceeding against petitioner began. It was then that there arose petitioner's constitutional right to be free from secret procedures gravely jeopardizing his liberty or property.[1] The judge has no more right or power under the law to intrude on the secret deliberations of a grand jury than anyone else. Grand juries, as this Court has said, " '. . . are not appointed for the prosecutor or for the court; they are appointed for the government and for the people . . . .' " *Hale* v. *Henkel,* 201 U. S. 43, 61. See also *Costello* v. *United States,* 350 U. S. 359, 362. When the grand jury came into the courtroom with the petitioner it was to get immediate action against the petitioner under its charges, which the Court now holds the judge was entitled to try summarily and secretly without further notice. This was the kind of trial from which

---

[1] I omit the word "life" from the usual phrase "life, liberty or property" because the courts have not yet said that their vast power to punish for contempt extends to taking the life of the convicted defendant.

the public should not be excluded if we are to follow constitutional commands. In fact, I believe, as I said in *Green* v. *United States, supra,* that at the very least a man whose liberty may be taken away for a period of months or years as punishment, is entitled to a full-fledged, constitutional, Bill of Rights trial.[2]

The Court seems to conclude its holding by invoking the doctrine of error without injury. In my judgment it is scant respect for the constitutional command that trials be had in public to look at the circumstances of the trial and conviction of a man tried in secret and approve the trial on the ground that "anyhow he wasn't hurt." I think every man is hurt when any defendant in America is convicted and sent to the penitentiary after a secret "trial" which is condemned by the Constitution's requirement of public trials as well as its command that all trials be conducted according to due process of law.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS joins, dissenting.

The Court's opinion makes it plain that the petitioner was adjudicated guilty of criminal contempt through a proceeding from which the public was excluded. And the whole Court is agreed that, whether petitioner's right is founded on the Fifth or the Sixth Amendment, he possessed a right, guaranteed by the Constitution, that this adjudication of his guilt of crime be made in public.

But the Court concludes that despite this, the petitioner is not entitled to our judgment of reversal because

---

[2] It is to be borne in mind that petitioner is not to be put in jail with the keys in his pocket, so that he would be released immediately upon complying with the court's valid order, see *Brown* v. *United States,* 359 U. S. 41, 55 (dissenting opinion), but is being punished by a year's imprisonment for a past and completed offense. See, *id.,* 53 (dissenting opinion); *Green* v. *United States, supra,* at 197 (dissenting opinion).

he did not object in precise enough terms to this infringement of his constitutional rights. Its ruling is, I submit, a radical departure from the principles which have prevailed, and should continue to prevail, in this Court respecting the waiver of a criminal defendant's constitutional procedural rights. The key to the matter has been the defendant's consent—his "express, intelligent consent." *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 277. The special interest of the public in the publicity of adjudications of guilt of crime has been repeatedly pointed out judicially, see *United States* v. *Kobli,* 172 F. 2d 919, 924; *Davis* v. *United States,* 247 F. 394, 395–396; *Neal* v. *State,* 86 Okla. Crim. 283, 289, 192 P. 2d 294, 297, and this has led some to argue that even the defendant's express consent should not suffice to permit proceedings to be had in secret. *Kirstowsky* v. *Superior Court,* 143 Cal. App. 2d 745, 300 P. 2d 163; *United Press Assns.* v. *Valente,* 308 N. Y. 71, 93, 123 N. E. 2d 777, 788 (dissenting opinion). But though the defendant's power to waive the constitutional protection be assumed, this consideration underscores how imperative is the requirement that the waiver of publicity be a meaningful one, based on real consent—be part of the "defendant's own conduct of his defense." *Id.,* at 81, 123 N. E. 2d, at 780 (majority opinion). The waiver must be one based on the defendant's conclusion that "in his particular situation his interests will be better served by foregoing the privilege than by exercising it." *United States* v. *Sorrentino,* 175 F. 2d 721, 723.

This requirement could not by the greatest stretch of the imagination be said to have been met here. Here petitioner's counsel by no means consented to the proceedings, but repeatedly made the most fundamental objections to the procedure whereby his client was being adjudicated guilty of crime, based on the Criminal Rules and on the very provision of the Constitution which the

Court today finds applicable. If the objection had been sustained, and the procedure contended for adopted, the error now laid bare would not have been committed. Whether the objection was well taken on its own grounds is irrelevant, since it is consent that must be found. The question is not whether the trial court was apprised of its error in the talismanic language the Court now finds in retrospect to have been essential. There are, to be sure, trial errors as to which specific objection is required of counsel. But where fundamental constitutional guarantees are omitted, the question is rather whether consent to proceed without the constitutional protection can be found. It is patent here that it cannot. Of course, this principle is hardly to be altered by the Court's transparent semantic device of phrasing the constitutional right of this defendant as one that did not come into existence until he made explicit request that he have its benefits.* The judgment should be reversed.

---

*Apparently through the same device the Court has avoided the settled rule of the federal courts that a showing of prejudice is not necessary for reversal of a conviction not had in public proceedings. *Davis* v. *United States,* 247 F. 394, 398–399 (C. A. 8th Cir.) ; *Tanksley* v. *United States,* 145 F. 2d 58, 59 (C. A. 9th Cir.) ; *United States* v. *Kobli,* 172 F. 2d 919, 921 (C. A. 3d Cir.). See *People* v. *Jelke,* 308 N. Y. 56, 67–68, 123 N. E. 2d 769, 775.