

IN THE
TENTH COURT OF APPEALS

————————————

No. 10-10-00307-CR

TRENA EVETTE MITCHELL,

Appellant

v.

THE STATE OF TEXAS,

Appellee

————————————

From the 19th District Court
McLennan County, Texas
Trial Court No. 2010-149-C1

O P I N I O N

Trena Evette Mitchell was found guilty of the offense of Manslaughter and

sentenced to 12 years in prison. TEX. PENAL CODE ANN. § 19.04 (West 2011). We affirm

the judgment of the trial court.

ISSUES

During the course of the trial, evidence regarding some aspect of insurance was

offered, objected to, and then admitted. In addition to two issues regarding insurance,

Mitchell complains about the exclusion of her aunt from the punishment phase of the trial.

## THE OFFENSE

Richard Schroeder was riding his Harley Davidson motorcycle down Lake Shore Drive in Waco, Texas to a charity auction after lunch on December 12, 2009. He was wearing a Santa hat. At the intersection of Lake Shore Drive and Martin Luther King, Jr. Blvd., a brown Honda car, driven by Mitchell, made a left turn crossing in front of Schroeder onto Martin Luther King, Jr. Blvd. Schroeder's motorcycle hit the car in the back passenger area. Schroeder was thrown from his motorcycle. He died from internal injuries.

## SUMMARY OF THE EVIDENCE

Although the sufficiency of the evidence to support the conviction is not challenged in this appeal, we believe that, due to the nature of the offense and the issues raised on appeal, a more detailed recitation of the facts is necessary to give the reader a better overall view of the evidence presented to the jury. The primary issue in this case is whether the trial court erred in allowing the State to ask the insurance claims representative if she had made a determination of liability. This summary will first present what testimony had been heard prior to this question and the claims representative's answer. What was heard after the question and answer will then be presented.

*Testimony prior to the question*

Schroeder's wife, Mary, was following Schroeder in her vehicle. A couple of other vehicles were between her and Schroeder. As Schroeder approached the intersection of Lake Shore Drive and Martin Luther King, Jr. Blvd., Mary saw that the light was green. She thought Schroeder had made it through the intersection before the car turned and then she heard a pop. She thought another car had been hit, but when she proceeded through the intersection, she saw that it was Schroeder involved in the collision.

Randy McLaughlin was in the first vehicle at the light on Martin Luther King, Jr. Blvd. where it intersects with Lake Shore Drive. His light was red and from his vantage point, he could tell that traffic was flowing both directions on Lake Shore Drive through the intersection. When Schroeder hit Mitchell's car, the car spun around and ended up hitting the side of McLaughlin's vehicle. Based upon his familiarity with the intersection, McLaughlin believed that Mitchell did not have a green arrow when she turned from Lake Shore Drive to Martin Luther King, Jr. Blvd.

Mitchell's two daughters and a baby were in the car with Mitchell at the time of the collision. Mitchell and her daughters told police at the scene that Mitchell had a solid green light when she turned. Mitchell also told police that she did not know where the motorcycle had come from. After the collision occurred, one of Mitchell's daughters called Mitchell's husband, Gregory. Although he was not present at the

scene, Gregory testified at trial that he heard over the cell phone Mitchell and their daughters say that Mitchell had a green arrow. Ultimately, Mitchell was issued citations at the scene for no driver's license and for failure to yield the right of way.

Mitchell gave a statement to police three days after the collision stating she had a green arrow when she turned. She also said in her statement that she had never had a driver's license and had never applied for one because she had been told she was legally blind. Mitchell had special glasses made for her but was not wearing the glasses on the day of the collision. Gregory stated at trial that Mitchell did not wear the glasses because they were broken. He also believed she did not need them for distance, only for up close reading.

*Testimony after the question*

Kevin Powell, who was behind Schroeder a few car lengths on Lake Shore Drive at the time of the collision, had no doubt that the light was green when Schroeder proceeded through the intersection. Powell said the car turned so suddenly in front of Schroeder that Schroeder had no time to swerve, brake, or do anything.

Mitchell's daughters testified at trial that Mitchell had a green arrow when Mitchell turned left onto Martin Luther King, Jr. Blvd. But Jeremy Hendricks, a traffic analyst for the City of Waco, stated that if Schroeder had a green light, Mitchell could not have had a green arrow; rather, she would have had a solid green light.

Further, Debbie Ann Rivera, who worked for the Division for Blind Services, stated that the glasses issued to Mitchell were like binoculars so that Mitchell could focus at a distance.

## RULE 411—INSURANCE

Because it has some bearing on her second issue, we first discuss Mitchell's third issue in which she complains that the trial court erred in allowing evidence of her insurance coverage to be admitted when such evidence is specifically prohibited by Rule 411 of the Texas Rules of Evidence. Rule 411 provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully.

TEX. R. EVID. 411.

Mitchell's husband, Gregory, was called as a witness by the State. When the State sought to introduce two insurance policies acquired by Gregory, one in effect prior to the collision and one in effect at the time of the collision which covered the car Mitchell was driving, Mitchell objected. The State, however, had previously elicited testimony, without objection, from Gregory that the car was covered by insurance. The State had also previously elicited testimony without objection from Schroeder's wife, Mary, that she had to deal with State Farm, Mitchell's insurance company, after Schroeder's death.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a *timely* request, objection, or motion. TEX. R. APP. P. 33.1. "An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). *See also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

Mitchell did not object when first Mary and then Gregory testified about insurance coverage. Accordingly, error, if any, in admitting the insurance policies was cured. Mitchell's third issue is overruled.

## DETERMINATION OF LIABILITY

In her second issue, Mitchell contends the trial court erred in allowing the State to introduce evidence that Mitchell's insurance company had conducted an investigation and determined she was at fault. Mitchell argues that the determination of fault by the insurance company was irrelevant and "highly prejudicial."

Kiley Clark, a claims representative with State Farm Insurance, was called by the State and testified about the insurance policy covering the car involved in the collision. By this time, Mitchell's husband had already testified that the car Mitchell was driving was covered by insurance. Clark explained that although Mitchell was not a listed

driver on the insurance policy, she was a covered driver. Clark then discussed her investigation of the collision. She stated that she spoke with Mitchell and relayed to the jury Mitchell's side of the story. Clark also reviewed the police report and had an independent investigator interview the police officer. Clark relayed to the jury what was stated in the report and what the officer told the independent investigator. Clark also interviewed Randy McLaughlin, the driver of the third vehicle involved in the collision and told the jury what McLaughlin said he had seen.

Clark was then asked,

Without getting into what the sequence of the lights was, did you then determine liability based on what Randy McLaughlin said who was here, based on what Trena Mitchell had told you, and based on everything the officer said?

She answered, "Yes." But before Clark could completely explain her answer, Mitchell objected, stating, "Whether or not she determines liability based on what she read has no relevance in this particular case. It's highly prejudicial as far as what she's going to testify to." The objection was overruled, and Clark stated that based on the evidence and the seriousness of the injuries, State Farm decided to accept liability and take care of the damages under the policy.

*Ex parte Wheeler*

Mitchell relies solely on the Court of Criminal Appeals' opinion in *Ex parte Wheeler* for the proposition that the question asked by the State was irrelevant and highly prejudicial. *See Ex parte Wheeler*, 203 S.W.3d 317 (Tex. Crim. App. 2006). In

*Wheeler*, the underlying trial was long and grueling, and fault was hotly contested. The State's expert determined the defendant to be at fault while the defense expert determined the victim to be at fault. After 3 hours of cross-examination, the State asked the defense expert on re-cross, "Are you aware that [the defendant's] insurance carrier found her at fault?" When the defendant's counsel asked to approach the bench, the trial court sent the jury out of the courtroom. And after pondering the issue over the weekend, the trial court granted the defendant's motion for mistrial. Before the next trial, the defendant filed a pretrial writ of habeas corpus claiming a double jeopardy violation. The trial court denied the relief requested by the writ, but the intermediate appellate court reversed that determination. On further review, the Court of Criminal Appeals reversed the intermediate appellate court and affirmed the trial court's decision to deny the writ.

In route to its decision to reverse the intermediate appellate court's judgment, the Court of Criminal Appeals agreed with the intermediate appellate court that the question posed by the State about the defendant's expert's knowledge of the determination of fault by the defendant's insurance company was manifestly improper and stated that the question was "clearly barred by Rules 401-403." *Id*. at 324. The Court went on to say that what the insurance carrier concluded had very little probative value on the question of whether the defendant caused the fatal collision, was extremely prejudicial, and was the type of evidence Rule 403 was designed to exclude. *Id*. at 324-

325.   The Court then agreed with the intermediate appellate court that the prejudice from the prosecutor's improper question could not be cured by an instruction to disregard.  *Id*. at 325.

The intermediate appellate court in *Wheeler*, however, was deciding whether the prosecutor had goaded the defendant into requesting a mistrial, thus setting up a double jeopardy bar to retrial, and did not need to fully analyze the question asked by the State with regard to Rules 401, relevance, and Rule 403, prejudice.  It was the intermediate appellate court's double jeopardy analysis that the Court of Criminal Appeals reviewed.

We certainly have no quarrel with the Court of Criminal Appeals regarding the propriety and prejudicial nature of the question asked by the State in its review and application to a double jeopardy claim.  However, the situation in this case is significantly different for a number of reasons.  First, we are not conducting a double jeopardy analysis.  Second, the fact that Mitchell was covered by insurance had already been disclosed by two witnesses without objection.  Third, the State did not ask a witness not associated with the insurance company investigation whether that witness knew the insurance company had found Mitchell to be at fault.  Rather, the State asked the insurance claims representative whether she had determined liability.  And, finally, in *Wheeler*, the Court of Criminal Appeals impliedly, if not expressly, left open the issue of relevance of this type question when it stated, "… the insurance company's ultimate

act of conceding liability is barely (if at all) probative of appellant's 'fault' in causing the accident." *Id*. at 325. The relevance and improper prejudicial effect, if any, of that type of question when asked of the person who had actually conducted the investigation are what we have to decide in this case. Therefore, we will conduct a full analysis of the specific question asked by the State in light of the record as it existed at that time and the objections made by Mitchell under the appropriate standards for our review.

*Standard of Review*

We review a trial court's Rule 401 and 403 decisions for an abuse of discretion. *Moreno v. State,* 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). A reversal will occur only if the trial court's decision is outside the zone of reasonable disagreement. *Salazar v. State,* 38 S.W.3d 141, 150 (Tex. Crim. App. 2001). Further, if the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Sewell v. State,* 629 S.W.2d 42, 45 (Tex. Crim. App. 1982).

*Relevance*

Rule 401 defines "relevant evidence" as evidence having any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401; *see also Shuffield v. State,* 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or

disproving some fact of consequence. *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

Mitchell was charged with manslaughter. A person commits the offense of manslaughter if the person recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04 (West 2011). One of the issues in this case is whether Mitchell recklessly caused Schroeder's death. Her defense was that she had the signal for a protected left turn and therefore was not at fault. In essence, her contention was that she was not at fault for causing the fatal collision. Fault, therefore, is a fact of consequence. At a minimum, the question regarding whether Clark determined liability, even if determined under the burden of proof for a civil trial, allows for an inference of fault, thus providing a "small nudge" toward proving Mitchell was at fault in causing Schroeder's death. Accordingly, the trial court did not err in overruling Mitchell's objection to the relevance of the State's question.

### Rule 403 Balancing Test

Although relevant, evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403; *Solomon v. State,* 49 S.W.3d 356, 366 & n.26 (Tex. Crim. App. 2001). The balance between the probative value and the countervailing factors set out in Rule 403 is in favor of the admission of otherwise relevant evidence.

*De La Paz v. State,* 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). But, relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause. *Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex. Crim. App. 2006).

A trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641-642.

### *Probative Force & Need*

Based on the facts of this case, evidence that Mitchell's insurance company accepted liability did not make the issue of Mitchell's fault in the collision substantially more probable and was not that essential for the State's case. The State had ample other proof of Mitchell's fault in evidence. Two police officers had already testified that Mitchell was issued a citation for failure to yield right of way because, after talking to individuals at the scene, including Mitchell who said she had a solid green light, they

concluded that Mitchell was at fault. The officers had also talked with Mitchell's daughters at the scene and neither of them, at that time, said Mitchell had a green arrow. It was not until three days later at an interview with police that Mitchell first claimed to have a green arrow as opposed to a solid green light. On the other hand, Mitchell's husband, Gregory, testified at trial that, although he was not present at the scene, he heard over his cell phone Mitchell and their daughters say that Mitchell had a green arrow. While contradictory to what others had heard or seen, Gregory's testimony and Mitchell's change in her story did not, ultimately, undermine the State's case. Thus, while it's probative force was not particularly great, the State needed to present all the available evidence to establish Mitchell's responsibility for the collision. In this regard, the evidence was somewhat important because a third party with a financial interest aligned with Mitchell had, nevertheless, determined that Mitchell, and therefore, the insurance company, was liable under the policy.

### *Decision on an Improper Basis/Confuse or Distract the Jury/Undue Weight*

Evidence of insurance coverage is not normally admissible to show a person acted negligently or otherwise wrongfully. TEX. R. EVID. 411. The theory behind Rule 411, for its application in a civil case, is that a jury is more apt to render a money judgment against a defendant and for a larger amount if it knows that the defendant is protected by insurance. *AccuBanc Mortg. Corp. v. Drummonds*, 938 S.W.2d 135, 151 (Tex. App.—Fort Worth 1996, writ denied). However, in this criminal case, evidence of

Mitchell's insurance coverage had already been introduced without objection. But the question asked by the State and answered by Clark went one step further. It was not simply a coverage question; rather, it was whether Mitchell's insurance company determined and accepted liability. And we note that Mitchell, through cross examination of Clark, informed the jury that Clark determined Mitchell to be more than fifty percent responsible, and therefore, accepted liability for the damages done. Although this type of evidence could have a tendency to suggest a decision on an improper basis in a criminal case, the trial court could have reasonably concluded that in this case, it did not.

The state of the record must be taken into consideration. As noted above, two police officers already testified that they thought Mitchell was at fault in the collision. The jury had also heard Schroeder's wife, Mary, testify that she was following Schroeder on Lake Shore Drive and was positive that Schroeder's light was green when Schroeder entered the intersection. The jury further heard from Randy McLaughlin who was in the first vehicle at the light on Martin Luther King, Jr. Blvd. where it intersects with Lake Shore Drive. He stated that his light was red and that traffic was flowing in both directions on Lake Shore Drive. He also stated that he had traveled on both Martin Luther King, Jr. Blvd. and Lake Shore Drive frequently; and based upon his familiarity with the intersection, he believed that Mitchell did not have a green arrow when she turned from Lake Shore Drive to Martin Luther King, Jr. Blvd.

Therefore, because of what the jury had already heard before Clark testified, the trial court could have reasonably concluded that the testimony would not have a tendency to confuse or distract the jury or that it would be given undue weight by the jury.

*Undue Delay and Needless Presentation of Cumulative Evidence*

Although the State had similar evidence from which the jury could conclude that Mitchell was at fault, the question presented by the State and Clark's answer did not consume an inordinate amount of time.

*Conclusion*

After balancing the Rule 403 factors, the trial court could have reasonably concluded that the probative value of Clark's determination of liability was not substantially outweighed by the danger of unfair prejudice.

By our decision, we do not mean to say that a determination of liability by a defendant's insurance carrier will always be admissible in the face of a Rule 403 objection. Our decision is and must be limited to the facts of this particular case. It may be that, in an appropriate case, a trial court could reasonably conclude that the probative value of a determination of liability by a defendant's insurance carrier is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.[1]

Mitchell's second issue is overruled.

## PUBLIC TRIAL

Mitchell argues in her first issue that her right to a public trial was denied when her aunt was excluded from the punishment phase of the trial. At the beginning of the punishment phase, outside the presence of the jury, Mitchell's aunt, Doris Burkley, was excluded from the courtroom and the courthouse because of comments she had made to a local TV news station the night before, after the jury verdict of guilt had been returned. Mitchell did not object to Burkley's exclusion.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. Constitutional guarantees can be waived by failure to object at trial. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002); *Rodriguez v. State*, No. 04-04-00230-CR, 2005 Tex. App. LEXIS 2959, *2-5 (Tex. App.—San Antonio Apr. 20, 2005, pet. ref'd) (mem. op.) (not designated for publication) (right to public trial). In addition, we do not consider the defendant's right to a public trial to be one of the few "systemic

---

[1] Although not argued by the State, we note that the trial court may have concluded that because of the prior introduction of evidence about insurance coverage in *this* proceeding, the jury could have been confused or left to speculate about liability and thus admitted the evidence to avoid confusion or speculation.

requirements" that a trial court must follow even if the parties wish otherwise, nor do we consider it a "waiveable" right which must be implemented unless expressly waived. *See Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004). Accordingly, we hold that by failing to object at the time the trial court excluded only one person from Mitchell's trial, Burkley, Mitchell waived her right to present this complaint on appeal. *See McEntire v. State*, 265 S.W.3d 721, 723 (Tex. App.—Texarkana 2008, no pet.); *see also Levine v. United States*, 362 U.S. 610, 619-20, 4 L. Ed. 2d 989, 80 S. Ct. 1038 (1960) (concluding that general objection to the nature of the proceedings was insufficient to alert the trial court to public trial objection, thus appellant did not preserve error for review).

Mitchell's first issue is overruled.

## CONCLUSION

Having overruled each issue, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed November 9, 2011
Publish
[CR25]