NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0236n.06

No. 10-2699

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

WILLIAM JOHNSON,

    Petitioner-Appellant,

v.

JERI-ANN SHERRY, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**

*Feb 29, 2012*

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: MARTIN, GIBBONS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Petitioner William Johnson was convicted of murder in state court. He argues that the trial judge erred in temporarily closing his trial to spectators and that his trial lawyer was ineffective for agreeing to the closure. The district court denied habeas relief. We affirm.

On March 3, 2002, there was a melee at a dance hall in Hamtramck, Michigan. Outside the hall, someone shot a gun multiple times. The bullets killed Carlos Davis, wounded James Mathis and Larry Lewis, and missed Robert Richards. During the investigation, witnesses identified William Johnson as the shooter. One of those witnesses, Elvin Robinson, was shot to death before he could testify at Johnson's preliminary exam. Another witness, Richards, did testify at the exam; he was then shot to death in his bed. After the shootings, three other key witnesses—Mathis, Lewis,

and Damon Ramsuer—understandably feared for their lives. To encourage them to testify truthfully, the prosecutor moved to close the courtroom to observers during their trial testimony. Defense counsel consented, but asked that the jury not be told why no spectators were present. The trial court agreed and ordered the courtroom closed for less than two hours. Following the three-day trial, the jury convicted Johnson of second-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony.

The Michigan Court of Appeals affirmed Johnson's conviction. Johnson thereafter filed a habeas petition in federal court. He argued that closing the courtroom denied his Sixth Amendment right to a "public trial," in violation of *Waller v. Georgia*, 467 U.S. 39 (1984), and that his counsel was ineffective by consenting to the closure, in violation of *Strickland v. Washington*, 466 U.S. 668 (1984). The district court denied the petition. We vacated and remanded for the district court to hold an evidentiary hearing. *See Johnson v. Sherry*, 586 F.3d 439, 447 (2009) ("*Johnson I*"). The district court held that hearing, then denied the petition once again. Johnson brought this appeal.

While his appeal was pending, the Supreme Court held that "evidence introduced in federal court has no bearing" on review of claims "adjudicated on the merits by a state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011). Johnson's claims were adjudicated on the merits by the state court here; and thus, notwithstanding our remand, we cannot consider the evidence presented at Johnson's federal evidentiary hearing. *See id.* at 1398.

We review a district court's denial of habeas corpus de novo. *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011). To succeed on the merits, a petitioner must show that the state court's decision

was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

Johnson first claims that the trial court should not have closed the trial, and that the Michigan Court of Appeals was unreasonable in concluding otherwise. The state court correctly identified the four-prong test from *Waller*: Closure was justified if the prosecutor "advance[d] an overriding interest" supporting closing the trial and demonstrated that the closure was "no broader than necessary to protect that interest," and if the trial court considered "reasonable alternatives to closing the proceeding" and made "findings adequate to support the closure." 467 U.S. at 48. The state court then held that all four *Waller* requirements were satisfied here.

First, the court held, "the prosecutor showed that there was an overriding interest because three key witnesses, including two complainants, were justifiably afraid to testify because two other witnesses had been killed under suspicious circumstances." *People v. Johnson*, No. 247227, 2004 WL 1882880, at *2 (Mich. Ct. App. Aug. 24, 2004). We can find—and Johnson identifies—no other case where the interest in closure was as compelling as it was here. Normally, publicity encourages witnesses to tell the truth. *See Waller*, 467 U.S. at 46. This case was abnormal. The witnesses feared that they too might be killed if spectators saw them putting the shooter behind bars, so closing the trial was designed to make them more likely to tell the truth. Courts have found closing the courtroom to certain spectators (admittedly less intrusive than a full closure) to be justified when witnesses feared retaliation—and when the threats were less stark than those here. *See, e.g., Martin v. Bissonette*, 118 F.3d 871, 873, 875–76 (1st Cir. 1997); *Woods v. Kuhlmann*, 977 F.2d 74, 74–77 (2d Cir. 1992).

Second, the Michigan court found that "[t]he closure was not broader than necessary to protect these witnesses' safety." *Johnson*, 2004 WL 1882880, at *2. This too was reasonable. Since all three witnesses were afraid, closing the trial for the entire one hour and 42 minutes of their testimony was arguably necessary. Johnson asserts that the trial court need not have excluded all spectators, particularly his family members. But the court did not know who had killed the other witnesses, and thus it would not have known whom not to exclude. And the goal was to assuage the testifying witnesses' fears; the court could have reasonably concluded that they would be afraid to tell the truth if anyone unknown to them was watching. Whatever special solicitude for family members some courts of appeals have proffered, the Supreme Court has never suggested that a trial court must satisfy a more stringent test before excluding family members. *See Martin*, 118 F.3d at 876. It was reasonable to exclude them here. *See id.*

Third, the Michigan court noted that Johnson "did not propose an alternative means of protecting [the witnesses'] safety." *Johnson*, 2004 WL 1882880, at *2. Johnson contends that the court had an independent duty to consider alternatives, even though he had waived his right in the trial court. The state court disagreed. To obtain relief, Johnson must show the state court unreasonably applied clear Supreme Court precedent. In making his showing, Johnson may rely only on precedent on the books when the Michigan Court of Appeals rendered its decision. *See Greene v. Fisher*, 132 S. Ct. 38, 44 (2011).

At the time of its decision, the state court faced two relevant precedents pointing in different directions. *Waller* stated that "the trial court must consider" alternatives, but did not explicitly say that the court must do so even when the defendant consents to closure. (The defendant objected to

-4-

closure in *Waller*.) Since the time of the state court's decision here, the Supreme Court has clarified that *when a party objects* to closure, but does not propose alternatives, the judge must think of some sua sponte. *See Presley v. Georgia*, 130 S. Ct. 721, 724 (2010). Indeed, *Presley* said that *Waller* was "clear" on this point. *Id.* But the situation here was different. Johnson, through counsel, affirmatively consented to closure and waived his objection in the trial court. And thus a different Supreme Court case arguably controlled. In *Levine v. United States*, 362 U.S. 610 (1960), the trial court adjudicated the defendant's criminal contempt proceeding with a closed courtroom. *See id.* at 618. The defendant made "no request to open the courtroom[.]" *Id.* Indeed, he raised the public trial claim "only as an afterthought on appeal." *Id.* at 620. In these circumstances, the Court held, the trial judge need not have opened the courtroom "on his own motion[.]" *Id.* at 619. Thus, the state court could reasonably think that when a defendant consents and thereby provides no "notice of the claim," the "onus" will not be on the trial court to fulfill all the same requirements that apply when a defendant objects. *Id.*

One might argue that *Levine* is distinguishable. Notably, the proceeding there was for criminal contempt. That meant that the right to a public trial there derived from due process rather than the Sixth Amendment. *See id.* at 616–17. But the Court never stated that its forfeiture holding was limited to public trials guaranteed by the Due Process Clause rather than the Sixth Amendment. Moreover, the Court has continued to cite *Levine* even after its decision in *Waller*. *See Peretz v. United States*, 501 U.S. 923, 936 (1991). But to decide this case we need not decide whether *Waller* or *Levine* governs in a case like this one. It is enough to say that, in light of *Levine*, *Waller* arguably did not require sua sponte consideration here; thus the Michigan Court of Appeals did not

unreasonably apply "clearly established" Supreme Court precedent in addressing the third *Waller* prong. *See Railey v. Webb*, 540 F.3d 393, 413–14 (6th Cir. 2008).

As to the last *Waller* requirement, the state court reasoned that, "though the trial court did not specifically articulate findings in support of the closure, it is apparent from the record that the trial court's decision was based on the suspicious deaths of Richards and Robinson." *Johnson*, 2004 WL 1882880, at *2. *Waller* requires findings sufficient for "a reviewing court [to] determine whether the closure order was properly entered." *Waller*, 467 U.S. at 45 (citation omitted). The Michigan court was not unreasonable in concluding that the on-record exchange between the judge, the prosecutor, and Johnson's counsel served this purpose. *See Woods*, 977 F.2d at 77–78. The state court reasonably rejected Johnson's public trial claim.

Johnson also argues that his lawyer rendered ineffective assistance by consenting to the closure. The state court rejected this argument too. It noted that, to establish deficient performance, Johnson must show that his lawyer's decision "was objectively unreasonable in light of prevailing professional norms[.]" *Johnson*, 2004 WL 1882880, at *3. The court reasoned that, because the closure was justified, "trial counsel's acquiescence" to the closure was not "objectively unreasonable." *Id.* Our review of this holding is "doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen*, 131 S. Ct. at 1403 (internal punctuation and citations omitted).

When the prosecutor told the judge that witnesses had been killed under suspicious circumstances and requested that the judge close the trial, Johnson's lawyer had a decision to make: He could challenge the suggestion or he could acquiesce. Had he challenged it, the judge might have

inquired further into the suspicious circumstances, which (to understate matters) might not have presented Johnson in the best light. *See Johnson*, 586 F.3d at 448 (Kethledge, J., dissenting) ("In defending a murder charge, it is a bad idea, I think, to leave the judge with a smoldering suspicion that your client had a role in killing two of the prosecution's key witnesses before trial."). Moreover, because the interest here was compelling, the judge would likely have overruled the objection, and the court of appeals would have likely affirmed. Johnson's lawyer apparently weighed the minimal benefits against the significant costs of objecting to the closure, and then decided against it. The Constitution permitted him that choice.

Johnson also argues before us that his lawyer never consulted with him about the closure. But he did not make that argument to the state appellate court. Johnson's failure constitutes procedural default. *See Pudelski v. Wilson*, 576 F.3d 595, 605–06 (6th Cir. 2009). Johnson does not even attempt to show cause for his default, which is therefore unexcused. *See Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010) (en banc).

The district court's judgment is affirmed.